## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1988 (ESH) |
| ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-2154 (RBW) |
| ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** ) | |
| ) | |
| Defendant. ) | |

## MOTION TO CONSOLIDATE

Pursuant to Fed. R. Civ. P. 42, plaintiff Electronic Frontier Foundation ("EFF") hereby

moves to consolidate the above-captioned actions.  As we explain more fully below, these cases

raise a common question of law concerning EFF's right to obtain expedited processing of

requests it has submitted under the Freedom of Information Act ("FOIA") – specifically, whether

EFF is "primarily engaged in disseminating information to the public" within the meaning of the

statute.   As such, consolidation of the cases is appropriate.  Counsel for defendant Department

of Homeland Security ("DHS") has represented that the agency intends to oppose plaintiff's

motion.

**Factual Background**

These cases arise from defendant DHS's handling of three FOIA requests submitted by plaintiff EFF seeking the disclosure of agency records relating to, *inter alia*, the agency's collection and use of airline passenger data.  Plaintiff asserted a statutory right to "expedited processing" of the three requests on the ground that there is an "urgency to inform the public" about the subjects of the requests, and the requests were made by "a person primarily engaged in disseminating information."  5 U.S.C. § 552(a)(6)(E)(v)(II).  Defendant DHS refused to expedite the processing of the requests, finding that there is no "urgency to inform the public" and that EFF is not "primarily engaged in disseminating information."

**I.  The Request at Issue in Civil Action No. 06-1988**

In October 2006, the United States ("U.S.") and the European Union ("EU") reached a temporary agreement on the processing and transfer of Passenger Name Record ("PNR") data to DHS from commercial airline flights between the U.S. and the EU.[1]  This understanding replaced an agreement concerning the transfer of such data that was reached in 2004, and found invalid in 2006 by the European Court of Justice.[2]

At the time the new agreement was reached, DHS sent a letter to EU officials stating that it would more broadly construe representations the agency had made in "Undertakings" in 2004[3]

---

[1] Agreement Between the European Union and the United States of America on the Processing and Transfer of Passenger Name Record (PNR) Data by Air Carriers to the United States Department of Homeland Security, Bureau of Customs and Border Protection (Oct. 27, 2006). http://ec.europa.eu/justice_home/fsj/privacy/docs/adequacy/pnr/2006_10_accord_US_en.pdf.

[2] Joined Cases C-317/04 and C-318/04, *European Parliament v. Council of the European Union and Comm'n of the European Communities*, 2006 ECJ CELEX LEXIS 239 (May 30, 2006).

[3] The representations (formally known as the Undertakings of the Department of Homeland Security Bureau of Customs and Border Protection Regarding the Handling of Passenger Name Record Data) are available at 69 Fed. Reg. 41543-41547 (July 9, 2004).

about how it would handle passenger data transferred between the EU and U.S.[4]  Specifically,

DHS intended to permit, among other things, more substantial disclosure of passenger data to

other U.S. agencies with counterterrorism functions.  The media reported extensively on the

finalization of the temporary agreement and DHS's change in policy on how it would handle the

EU-U.S. PNR data.[5]

By letter transmitted to DHS on October 20, 2006 (attached hereto at Exhibit A), plaintiff

requested under the FOIA agency records concerning the renegotiated agreement between the

U.S. and the EU, and the handling of PNR data under the 2004 Undertakings.  Plaintiff requested

expedited processing of the FOIA request under DHS's regulations, 6 CFR § 5.5(d)(1)(ii), on the

ground that the request pertained to a matter about which there is an "urgency to inform the

public about an actual or alleged federal government activity," and the request was made by "a

person primarily engaged in disseminating information."  *Id*. at 2.  In support of its request for

expedited processing, plaintiff provided substantial evidence that it is "primarily engaged in

disseminating information."  *Id*. at 3-4.  In support of its argument that there is an "urgency to

inform the public about actual or alleged federal government activity," plaintiff cited

considerable media coverage of the temporary agreement and noted that it will have to be

renegotiated before it expires in July 2007.  *Id*. at 2-3.

---

[4] Letter to the Council Presidency and the Commission from the Department of Homeland Security of the United States of America, Concerning the Interpretation of Certain Provisions of the Undertakings Issued by DHS on 11 May 2004 in Collection with the Transfer by Air Carriers of Passenger Name Record (PNR) Data (Oct. 27, 2006).
http://ec.europa.eu/justice_home/fsj/privacy/docs/adequacy/pnr/2006_10_letter_DHS_en.pdf.

[5] *See*, *e.g.*, Reuters, *U.S., Europe Reach Deal on Air Passenger Data*, Oct. 6, 2006; Associated Press, *Deal Reached on Passenger Data*, Oct. 6, 2006; Mark John, *U.S. to Seek More Leeway on Air Passenger Records*, Reuters, Oct. 17, 2006.

By letter dated November 1, 2006 (attached hereto as Exhibit B), DHS denied plaintiff's request for expedited processing, asserting, *inter alia*, that EFF is "not primarily engaged in the disseminating of information to the public."  By letter transmitted to defendant on November 21, 2006 (attached hereto as Exhibit C), plaintiff appealed the agency's denial of EFF's expedition request.  Plaintiff filed suit on November 24, 2006, after DHS failed to respond to plaintiff's request within the 20-working-day period set forth in the FOIA.  After DHS failed to timely respond to EFF's administrative appeal, plaintiff amended its complaint on December 21, 2006, to allege that DHS had unlawfully denied plaintiff's request for expedited processing.

**II.  The Requests at Issue in Civil Action No. 06-2154**

On November 2, 2006, defendant DHS and its component, Customs and Border Protection, published a Federal Register notice describing a "system of records" called the "Automated Targeting System" ("ATS").  71 Fed. Reg. 64543-64546.  The ATS, as described by DHS, is a data mining system that the agency uses to create "risk assessments" for tens of millions of travelers, including international travelers and U.S. citizens, based on extensive personal information.  *Id.* at 64544.  The personal data used by ATS to make determinations about travelers includes, *inter alia*, PNR data such as the records covered by the 2004 Undertakings.  *Id.* at 64543.

By letters to DHS dated November 7, 2006, and December 6, 2006 (attached hereto as Exhibits D & E), plaintiff requested under the FOIA agency records concerning the ATS. Plaintiff requested expedited processing of both FOIA requests, stating that they meet the criteria for expedited processing under defendant DHS's regulations, 6 C.F.R. § 5.5(d)(1)(ii), because they pertain to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity," and the requests are made by "a person primarily engaged

in disseminating information." Exhibit D at 2; Exhibit E at 3. In both requests, plaintiff

provided defendant DHS extensive documentation demonstrating that EFF is "primarily engaged

in disseminating information," and cited extensive media coverage to show that there is an

"urgency to inform the public about actual or alleged federal government activity." Exhibit D at

2-3; Exhibit E at 3-5.

By letter to plaintiff dated December 14, 2006 (attached hereto as Exhibit F), DHS

advised plaintiff that the agency had "aggregated" plaintiff's FOIA requests dated November 7,

2006, and December 6, 2006, "to simplify processing." Exhibit F at 1. Defendant further

advised plaintiff that "[a]s it relates to your request for expedited treatment, your request is

denied," because, *inter alia*, "you are not primarily engaged in the disseminating of information

to the public." *Id*. at 3. Plaintiff filed suit on December 19, 2006, alleging that DHS has violated

the FOIA with respect to the expedited processing of these requests.[6]

## Argument

Fed. R. Civ. P. 42 provides, in pertinent part, that "[w]hen actions involving a common

question of law or fact are pending before the court . . . it may order all the actions consolidated."

Such consolidation facilitates "convenience and economy in judicial administration." 9 Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2383 (Thompson/West 2006).

A district court has broad discretion to decide whether consolidation is appropriate by

"weigh[ing] the saving of time and effort that consolidation would produce against any

inconvenience, delay, or expense that it would cause." *Id.* This Court has consolidated cases

---

[6] At the time of filing, plaintiff did not identify Civil Action No. 06-2154 as related to Civil
Action No. 06-1988 under Local Rule 40.5(b)(2) because a common issue of law was not present
until plaintiff amended its complaint in No. 06-1988 on December 21 to allege that DHS had
violated the expedited processing provisions of the FOIA and the agency's own regulations.

involving similar or related FOIA requests on numerous occasions. *See, e.g.,* Order, *Electronic Privacy Information Center v. Dep't of Justice*, No. 06-0096 (HHK) (Feb. 9, 2006); *Judicial Watch v. Dep't of Energy*, 207 F.R.D. 8, 9 (D.D.C. 2002) (FOIA cases consolidated "in the interest of promoting judicial economy and preventing potentially inconsistent rulings").

Consolidation is desirable here because it will allow the cases to be more efficiently litigated and prevent "inconsistent rulings." Both cases present the common question of whether EFF is "primarily engaged in disseminating information to the public" – one component of the two-prong test for entitlement to expedited FOIA processing. The D.C. Circuit has recognized the importance of consistency in the application of FOIA's expedition provision, *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 307 (D.C. Cir. 2001), and it is difficult to imagine a circumstance more appropriate for uniformity than where, as here, the institutional status of a single requester is at issue in two cases. This issue should properly be briefed before a single judge and resolved only once, not concurrently by two judges.

In addition to the common issue of whether EFF is "primarily engaged in disseminating information to the public," the two cases raise similar issues relating to the asserted "urgency to inform the public" about the subject matter of the FOIA requests. Indeed, the linkage between the U.S.-EU PNR negotiations and the Automated Targeting System – and the resulting public interest in both matters – was recently underscored by a high-ranking EU official. On December 13, 2006, European Commissioner Franco Frattini stated, *inter alia*, during a speech before the European Parliament that

> the information published by the DHS [about ATS] reveals significant differences between the way in which PNR data are handled within the Automated Targeting System on the one hand and the stricter regime for European PNR data according to the Undertakings given by the DHS. The [European] Council Presidency and Commission are contacting the US Government to request formal confirmation

6

that the way EU PNR data are handled in the ATS is the one described in the Undertakings.[7]

It is thus apparent that the Court's review of the "urgency to inform" prong of the expedition standard will necessarily involve similar considerations with respect to both the PNR request and the ATS requests.  Coupled with the "dissemination" issue – which is identical in both cases – the similarity of the "urgency" factors bolsters the conclusion that these cases are clearly appropriate for consolidation.

### Conclusion

For the foregoing reasons, the Court should grant plaintiff's motion and consolidate the cases.

Respectfully submitted,


  /s/ David L. Sobel
DAVID L. SOBEL
D.C. Bar No. 360418

MARCIA HOFMANN
D.C. Bar No. 484136

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009
(202) 797-9009

Counsel for Plaintiff

---

[7] Franco Frattini, European Commissioner for Justice, Freedom, and Security, Speech Before the European Parliament: Data Protection and Transfer of PNR Data" (Dec. 13, 2006). http://europa.eu/rapid/pressReleasesAction.do?reference=SPEECH/06/801&format= HTML&aged=0&language=EN&guiLanguage=en.

# Exhibit A

Motion to Consolidate

*Electronic Frontier Foundation v. Department of Homeland Security*

**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

October 20, 2006

## BY FACSIMILE — (571) 227-1125

Department of Homeland Security Chief FOIA Officer
Hugo Teufel
Chief FOIA Officer
The Privacy Office
Department of Homeland Security
Arlington, VA 22202

RE:    Freedom of Information Act Request and
Request for Expedited Processing

Dear Mr. Teufel:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552, and is submitted to the Department of Homeland Security ("DHS") on behalf of
the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA
Litigation for Accountable Government ("FLAG") Project, which works to obtain government
documents and make them widely available to the public.

In 2004, the United States ("U.S.") and European Union ("EU") reached an agreement on the
processing and transfer of Passenger Name Record data to DHS concerning flights between the
US and EU.[1] Shortly thereafter, DHS issued the "Undertakings," a set of representations
reflecting how DHS (specifically, Customs and Border Protection) would handle the data.[2] The
European Court of Justice ruled the EU-U.S. agreement illegal under EU law in May 2006,
ordering that it would become void on September 30.[3] In light of the decision, the U.S. and EU
worked to renegotiate the terms of the agreement.

Earlier this month, the U.S. and EU reached a temporary agreement on the processing and
transfer of passenger data from airlines to DHS to replace the 2004 agreement.[4] At the same
time, DHS sent a letter to EU officials stating that it will interpret the 2004 Undertakings more
broadly to permit, among other things, more substantial disclosure of passenger data to other
U.S. agencies with counterterrorism functions.[5] Even with the new agreement in place, Reuters
reported, "[t]he United States will push for more flexible arrangements with Europe on how U.S.
agencies can use the personal records of air passengers to combat terrorism." Mark John, *U.S. to*

---

[1] This agreement is available at http://www.eur-lex.europa.eu/LexUriServ/site/en/oj/2004/l_183/
l_18320040520en00840085.pdf.

[2] The Undertakings are available at http://www.dhs.gov/interweb/assetlibrary/CBP-DHS_PNRUndertakings5-25-
04.pdf.

[3] The court's decision is available at http://curia.europa.eu/jurisp/cgi-bin/gettext.pl?where=&lang=en&num=
79939469C19040317&doc=T&ouvert=T&seance=ARRET.

[4] The new agreement is available at http://www.statewatch.org/news/2006/oct/eu-usa-pnr-coun-new-agreement.pdf.

[5] The letter is available at http://www.statewatch.org/news/2006/oct/eu-usa-pnr-letter-13738.pdf.

*Seek More Leeway on Air Passenger Records*, Reuters, Oct. 17, 2006. In the absence of further government action, the interim agreement will expire on July 31, 2007.

We are seeking the following agency records from May 30, 2006 to the present (including, but not limited to, electronic records):

1. emails, letters, reports, or other correspondence from DHS officials to European Union officials concerning the transfer and use of passenger data from air carriers to the US for prescreening purposes;

2. emails, letters, statements, memoranda, or other correspondence from DHS officials to U.S. government officials or employees interpreting or providing guidance on how to interpret the Undertakings;

3. records describing how passenger data transferred to the U.S. under the temporary agreement is to be retained, secured, used, disclosed to other entities, or combined with information from other sources; and

4. complaints received from EU citizens or official entities concerning DHS acquisition, maintenance and use of passenger data of EU citizens.

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity," and the request is made by "a person primarily engaged in disseminating information." 6 CFR § 5.5(d)(1)(ii).

The temporary agreement on transfer of passenger data expires on July 31, 2007, and will need to be renegotiated prior to that date. The government activity at issue here — DHS's reinterpretation of privacy commitments to the EU — raises serious questions about how DHS will implement privacy safeguards and address the privacy concerns that caused controversy even under the more protective 2004 agreement. Thus, there is a particular urgency for the public to obtain information about DHS's construction of the Undertakings under the new agreement, as well as the effectiveness of the measures in place to secure passengers' data privacy. According to the Associated Press, the "arduous" negotiations to reach the interim agreement "reflected deep divisions between the United States and the European Union over anti-terror measures and to what length governments should go in curbing personal freedoms to prevent attacks." Associated Press, *Deal Reached on Passenger Data*, Oct. 6, 2006. As Reuters noted:

> EU lawmakers raised worries that Washington was riding roughshod over data protection concerns in its quest after the September 11, 2001 attacks to further a "war on terrorism" whose tactics many Europeans question. One Greek left-wing deputy accused the EU of having "totally caved in" to U.S. pressure.

Reuters, *US., Europe Reach Deal on Air Passenger Data*, Oct. 6, 2006. These issues have

attracted substantial media interest in recent days. In fact, Google News search for "privacy and 'passenger data'" returns about 621 results from news outlets throughout the world (see first page of Google News search results attached).

Indeed, the Department itself has recognized both the newsworthiness of this matter and the importance of informing the public of developments in its negotiations with the EU. On September 30, 2006, the Department issued a press release containing a statement from Secretary Chertoff concerning the negotiations.[6]

The purpose of this request is to obtain information directly relevant to DHS's guidelines on the handling of EU-US passenger data before July 31, 2007, when the temporary agreement is set to expire. The records requested involve the manner in which DHS is construing its policies on this matter, and clearly meet the standard for expedited processing. There is clearly "an urgency to inform the public" about the Department's policies with respect to this issue in order to facilitate a full and informed public debate on the U.S. position in the upcoming bi-lateral negotiations.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

## Request for News Media Fee Status

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a representative of the news media pursuant to the FOIA and 6 C.F.R. § 5.11(b)(6).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[7] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[8] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 40,681,430 hits in September 2006 — an average of 56,501 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in

---

[6] This press release is available at http://www.dhs.gov/xnews/releases/pr_1159893986311.shtm.

[7] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/pqShowGsReport.do?npoId=561625 (last visited Oct. 16, 2006).

[8] *Id.*

3

technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 538,297 hits in September 2006.[9]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 1,300 times from EFF's web site last month.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 6 C.F.R. § 5.11(k). To determine whether a request meets this standard, Department of Homeland Security components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 6 C.F.R. §§ 5.11(k)(i), (ii). This request clearly satisfies these criteria.

First, DHS's handling of passenger data from EU-U.S. flights concerns "the operations or activities of the government." 6 C.F.R. § 5.11(k)(2)(i). DHS is a government agency, and its use of passenger data to make determinations about travelers unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 6 C.F.R. § 5.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on the manner in which DHS uses passenger data to screen travelers entering the United States, as well as the subsequent retention,

---

[9] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

uses, and disclosures of that data.

Third, the requested material will "contribute to public understanding" of DHS's handling of EU-U.S. passenger data. 6 C.F.R. § 5.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of DHS's passenger data policies, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of how DHS handles EU-U.S. passenger data. 6 C.F.R. § 5.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the contours of the new agreement and DHS's interpretation of the Undertakings, as well as contribute to the public debate about the adequacy of these policies under EU law.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 6 C.F.R. § 5.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact me at (202) 797-9009 x. 12. As the FOIA provides, I will anticipate a determination on our request for expedited processing within ten (10) calendar days.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Sincerely,

Marcia Hofmann
Staff Attorney

# Exhibit B

Motion to Consolidate

*Electronic Frontier Foundation v. Department of Homeland Security*

U.S. Department of Homeland Security
Arlington, Virginia 22202



**Homeland Security**

*Privacy Office DHS-D3*

November 1, 2006

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009

Re:  **DHS/OS/PRIV 07-90/Hofmann request**

Dear Ms. Hofmann:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated October 20, 2006, seeking the following DHS records from May 30, 2006 to the present:

1.  All correspondence from DHS officials to European Union officials concerning the transfer and use of passenger data from air carriers to the US for prescreening purposes.

2.  All correspondence from DHS officials to U.S. government officials or employees interpreting or providing guidance on how to interpret the undertakings.

3.  Records describing how passenger data transferred to the U.S. under the temporary agreement is to be retained, secured, used disclosed to other entities, or combined with information from other sources.

4.  Complaints received from EU citizens or official entities concerning DHS acquisition, maintenance and use of passenger data from EU citizens.

We are holding your fee waiver request in abeyance pending the quantification of responsive records. In the event that your fee waiver request is denied, we shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requestors.  As a non-commercial requestor you will be charged 10-cents a page for duplication, although the first 100 pages are free, as are the first two hours of search time, after which you will pay the per quarter-hour rate of the searcher. We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

As it relates to your request for expedited treatment, your request is denied. Pursuant to 5 U.S.C. §§552 (a)(6)(E)(i), each agency shall promulgate regulations providing for expedited processing of records. Accordingly, §5.5(d) of the DHS Interim FOIA and Privacy Act regulations, 6 C.F.R. Part 5, addresses the Department's criteria for granting expedited treatment. You do not qualify for either category. Clearly, the lack of expedited treatment in this case will not pose an imminent threat to the life or physical safety of an individual. In addition, you are not primarily engaged in the disseminating of information to the public, nor have you detailed with specificity why you feel there is an urgency to inform the public about this topic. This urgency would need to exceed the public's right to know about government activity

generally. Finally, you did not offer any supporting evidence of public interest that is any greater than the public's general interest in the transfer and use of passenger name data.

If you deem the decision to deny expedited treatment of your request an adverse determination, you may exercise your appeal rights. Should you wish to do so, you must send your appeal within 60 days of receipt of this letter to the following address: Office of General Counsel, Department of Homeland Security, Washington, D.C. 20528, following the procedures outlined in Subpart A, Section 5.9, of the DHS Regulations. Your envelope and letter should be marked "Freedom of Information Act Appeal." Copies of the DHS regulations are available at:
http://www.dhs.gov/dhspublic/interapp/editorial/editorial_0318.xml.

In addition, we are referring your request to the Acting FOIA Officer for U.S. Customs and Border Protection (CBP), Richard Chovanec, (Mint Annex-5th Floor) 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229, who will forward your request on for processing to the appropriate office within CBP. Please note that our decision regarding your request for a fee waiver and expedited processing applies to this office only, and CBP will issue a separate determination upon receipt of your request.

As it relates to this office, your request has been assigned reference number **DHS/OS/PRIV 07-90/Hofmann request**. Please refer to this identifier in any future correspondence. We have queried the appropriate component of DHS for responsive records. If any responsive records are located, they will be reviewed for determination of releasability.

Per §5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, the Department processes FOIA requests according to their order of receipt. We will make every effort to comply with your request in a timely manner; however, there are currently 61 open requests ahead of yours. Nevertheless, please be assured that one of the processors in our office will respond to your request as expeditiously as possible.

Sincerely,

Catherine M. Papoi
Acting Director, Departmental Disclosure & FOIA

# Exhibit C

Motion to Consolidate

*Electronic Frontier Foundation v. Department of Homeland Security*

**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

November 21, 2006

## BY FACSIMILE – 571-227-4171

Associate General Counsel
Office of General Counsel
Department of Homeland Security
Washington, DC 20528

### RE: Freedom of Information Act Appeal; DHS/OS/PRIV 07-90

To Whom It May Concern:

This letter constitutes an appeal pursuant to 5 U.S.C. § 552(a)(6)(E)(ii)(II). The Electronic Frontier Foundation ("EFF") appeals an initial determination issued on November 1, 2006, by Catherine M. Papoi, Acting Director, Departmental Disclosure & FOIA, with respect to the above-numbered request (attached hereto). Specifically, Ms. Papoi denied EFF's request to be treated as a "news media" requester for purposes of fee assessments, and denied its request for expedited processing of its FOIA request.

Entitlement to "News Media" Fee Assessment

In her letter, Ms. Papoi stated that unless EFF is granted a fee waiver, "we shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requestors," *i.e.*, fees will be assessed for both search and duplication. Ms. Papoi further states that the agency "will construe the submission of your request as an agreement to pay up to $25.00." By this letter, EFF is notifying the agency that it does *not* agree to pay *any* fees related to search time.

In our request letter of October 20, 2006, we provided extensive information in support of EFF's entitlement to "news media" status for purposes of fee assessments. That letter is incorporated herein by reference. In order to update the information we previously submitted, I am attaching hereto a copy of EFF's most recent newsletter, which includes coverage and analysis of issues such as electronic voting problems in the recent mid-term election, new developments in intellectual property law, a Federal Register notice published by DHS, and legislative and judicial consideration of the National Security Agency's surveillance program. I also note that since the newsletter was published last week, EFF's news blog (www.eff.org/deeplinks/) has covered additional news items, including a decision issued yesterday by the California Supreme Court concerning liability for information posted on the Internet. It is clear that this material, which EFF publishes on a regular and continuous basis, constitutes "news" within the meaning of the agency's regulations. 6 C.F.R. § 5.11(b)(6) ("The term 'news' means information that is about current events or that would be of current interest to the public."). EFF's publication of this material, *inter alia*, clearly qualifies it for classification as a "news

FOIA Appeal, DHS/OS/PRIV 07-90
November 21, 2006
Page two

media" entity within the meaning of the regulations.  *Id.*  ("Examples of news media entities include . . . publishers of periodicals . . . who make their products available for purchase or subscription by the general public.").

<u>Entitlement to Expedited Processing</u>

Ms. Papoi denied EFF's request to expedite the processing of its FOIA request on two grounds: 1) that EFF is "not primarily engaged in the disseminating of information to the public," and 2) that EFF has not "detailed with specificity why . . . there is an urgency to inform the public" about the Department's negotiations with the European Union with respect to the transfer of airline passenger data.  With respect to the dissemination issue, I incorporate by reference the information we have provided with respect to EFF's entitlement to "news media" status.

As for the "urgency" issue, Ms. Papoi asserted that EFF has not "offer[ed] any evidence of public interest that is greater than the public's general interest in the transfer and use of passenger name data."  In appealing from that determination, I reiterate and incorporate the information initially provided to the agency in support of EFF's FOIA request.  In addition, and to update the relevant "evidence," I note that Secretary Chertoff delivered a speech to the Federalist Society on November 17, in which he saw fit to highlight the dispute between the United States and the EU on passenger data.  *See* http://www.dhs.gov/xnews/speeches/sp_1163798467437.shtm.  The full text of that speech is incorporated herein by reference, and I specifically note the Secretary's acknowledgement that the privacy issues surrounding the transfer of passenger data "led to a very substantial debate."  *See also* Reuters, "Chertoff says U.S. threatened by international law," November 17, 2006 (attached hereto).  It is precisely the "substantial debate" the Secretary noted that establishes the public interest in the requested material.  EFF is clearly entitled to the expedited processing of its request.

As the FOIA and DHS regulations require, I look forward to your expeditious resolution of this appeal.  Feel free to contact me at (202) 797-9007 ext. 10 if I can provide you with additional information.

Sincerely,

David L. Sobel
Senior Counsel

attachments

# Exhibit E

Motion to Consolidate

*Electronic Frontier Foundation v. Department of Homeland Security*



**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

December 6, 2006

**BY FACSIMILE — (571) 227-1125**

Catherine M. Papoi
Acting Director
Departmental Disclosure & FOIA
Department of Homeland Security
Arlington, VA 22202

    RE: **Freedom of Information Act Request and**
        **Request for Expedited Processing**

Dear Ms. Papoi:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552, and is submitted to the Department of Homeland Security ("DHS") on behalf of
the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA
Litigation for Accountable Government ("FLAG") Project, which works to obtain government
documents and make them widely available to the public.

On November 2, 2006, DHS published a Privacy Act notice in the Federal Register concerning
what it described as a "new system of records" identified as the Automated Targeting System
("ATS"). 71 FR 64543. According to the notice, "[t]he new system of records will be effective
December 4, 2006, unless comments are received that result in a contrary determination." *Id.*
According to a Department spokesman, since "the mid-1990s, [ATS] was being used to screen
airline passengers and has expanded in use by Homeland Security since the department was
created almost four years ago." Exhibit 1 (attached hereto). As noted below, DHS yesterday
extended the public comment period until December 29.

We are seeking the following agency records (including, but not limited to, electronic records)
concerning the ATS:

  1. all Privacy Impact Assessments prepared for the ATS or any predecessor system that
  served the same function but bore a different name;

  2. all System of Records Notices ("SORNs") that discuss or describe targeting, screening
  or assigning "risk assessments" of U.S. citizens by Customs and Border Protection (or its
  predecessors);

  3. all records that discuss or describe the redress that is available to individuals who
  believe that the ATS contains or utilizes inaccurate, incomplete or outdated information
  about them;

4. all records that discuss or describe the potential consequences that individuals might experience as a result of the agency's use of the ATS, including but not limited to arrest, physical searches, surveillance, denial of the opportunity to travel, and loss of employment opportunities;

5. all records that discuss or identify the number of individuals who have been arrested as a result of screening by the ATS, and the offenses for which they were charged;

6. all complaints received from individuals concerning actions taken by the agency as a result of ATS "risk assessments" or other information contained in the ATS, and the agency's responses to those complaints;

7. all records that discuss or describe Section 514 of the Department of Homeland Security Appropriations Act, 2007, P.L. 109-295 (H.R. 5441) and its prohibition against the development or testing of "algorithms assigning risk to passengers whose names are not on Government watch lists;" and

8. all records that address any of the following issues:

a) whether a system of due process exists whereby aviation passengers determined to pose a threat are either delayed or prohibited from boarding their scheduled flights may appeal such decision and correct erroneous information contained in the ATS;

b) whether the underlying error rate of the government and private data bases that will be used in the ATS to assign a risk level to an individual will not produce a large number of false positives that will result in a significant number of individuals being treated mistakenly or security resources being diverted;

c) whether the agency has stress-tested and demonstrated the efficacy and accuracy of all search tools in the ATS and has demonstrated that the ATS can make an accurate predictive assessment of those individuals who may constitute a threat;

d) whether the Secretary of Homeland Security has established an internal oversight board to monitor the manner in which the ATS is being developed and prepared;

e) whether the agency has built in sufficient operational safeguards to reduce the opportunities for abuse;

f) whether substantial security measures are in place to protect the ATS from unauthorized access by hackers or other intruders;

2

g) whether the agency has adopted policies establishing effective oversight of the use and operation of the system;

h) whether there are no specific privacy concerns with the technological architecture of the system;

i) whether the agency has, pursuant to the requirements of section 44903(i)(2)(A) of title 49, United States Code, modified the ATS with respect to intrastate transportation to accommodate States with unique air transportation needs and passengers who might otherwise regularly trigger a high risk status; and

j) whether appropriate life-cycle cost estimates, and expenditure and program plans exist.

## Request for Expedited Processing

This request warrants expedited processing because it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity," and the request is made by "a person primarily engaged in disseminating information." 6 CFR § 5.5(d)(1)(ii).

First, there is substantial public interest in the Department's use of the ATS to assign "risk assessments" to American citizens. A search conducted on Google News indicates that since the Federal Register notice was published on November 2, almost 900 articles have been published that discuss the system and the privacy issues it raises (see first page of search results, attached hereto as Exhibit 2). The published articles include coverage by the Washington Post and the Associated Press (see Exhibits 3 & 4).

Further, there is an "urgency to inform the public" about the potential privacy implications of the ATS because the Department has solicited public comments and yesterday extended the comment period until December 29. In addition, Sen Patrick Leahy, incoming chairman of the Senate Judiciary Committee, has announced that oversight of the ATS and similar systems will occur when the new Congress convenes in January. Exhibits 1 & 5. Similarly, Senate Homeland Security Investigations Subcommittee Chairman Norm Coleman has indicated he also is examining the system. Sen. Coleman said, "We must ensure that this program is indeed working to prevent terrorism, while at the same time safeguarding the privacy of air travelers." Exhibit 1. Rep. Bennie Thompson, incoming chairman of the House Homeland Security Committee has written in a letter to Secretary Chertoff that "serious concerns have arisen that . . . some elements of ATS as practiced may constitute violations of privacy or civil rights." Exhibit 6.

The purpose of this request is to obtain information directly relevant to DHS's Privacy Act notice and the practices it describes (which will affect tens of millions of American citizens). There is clearly "an urgency to inform the public" about the Department's policies with respect to this issue in order to facilitate full and informed public comment and debate on the issue prior

to the new December 29 deadline the Department has imposed, and prior to the Congressional consideration of the system when the new Congress convenes in January.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a representative of the news media pursuant to the FOIA and 6 C.F.R. § 5.11(b)(6).

As an initial matter, I note that the Department recently acknowledged that EFF qualifies for "news media" fee status. In a letter to my colleague Marcia Hofmann, dated November 17, 2006, the Department informed us that "[f]or purposes of fees, your organization is considered news media," and that EFF is subject to fees "for duplication only." Exhibit 7. The agency's recent determination of our fee status was based upon the information reiterated below, which remains accurate and up-to-date.

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[1] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[2] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 40,681,430 hits in September 2006 — an average of 56,501 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 538,297 hits in September 2006.[3]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

---

[1] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/pqShowGsReport.do?npoId=561625 (last visited Oct. 16, 2006).

[2] *Id.*

[3] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

4

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/ cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 1,300 times from EFF's web site last month.

### Request for a Public Interest Fee Waiver

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 6 C.F.R. § 5.11(k). To determine whether a request meets this standard, Department of Homeland Security components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 6 C.F.R. §§ 5.11(k)(i), (ii). This request clearly satisfies these criteria.

First, DHS's handling of personal data and the assignment of "risk assessments" concern "the operations or activities of the government." 6 C.F.R. § 5.11(k)(2)(i). DHS is a government agency, and its use of passenger data to make determinations about travelers unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 6 C.F.R. § 5.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on the manner in which DHS uses personal data to screen travelers entering or exiting the United States, as well as the subsequent retention, uses, and disclosures of that data.

Third, the requested material will "contribute to public understanding" of DHS's handling of personal data. 6 C.F.R. § 5.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of DHS's data privacy policies, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

5

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of how DHS handles personal data. 6 C.F.R. § 5.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the contours of the ATS process, as well as contribute to the public debate about the adequacy of the privacy policies surrounding the system.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 6 C.F.R. § 5.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact me at (202) 797-9009 x. 10. As the FOIA provides, I will anticipate a determination on our expedition request within **10 calendar days**.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Sincerely,

David Sobel

David L. Sobel
Senior Counsel

attachments

6

# Exhibit F

Motion to Consolidate

*Electronic Frontier Foundation v. Department of Homeland Security*

U.S. Department of Homeland Security
Arlington, Virginia 22202



**Homeland
Security**

*Privacy Office DHS-D3*

December 14, 2006

Mr. David L. Sobel
Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009

Re: **DHS/OS/PRIV 07-160/Sobel request**

Dear Mr. Sobel:

This is in further response to your Freedom of Information Act (FOIA) request to the Department of
Homeland Security (DHS), dated November 7, 2006, requesting DHS records concerning the Automated
Targeting System (ATS). Subsequent to acknowledging receipt of your request, we received a second
request, dated December 6, 2006, seeking additional records pertaining to the ATS. As these two requests
are directly related, we have aggregated them to simplify processing. The following is a consolidated list
of records requested:

1. All Privacy Impact Assessments prepared for the ATS system or any predecessor system that
   served the same function but bore a different name.

2. A Memorandum of Understanding executed on or about March 9, 2005 between Customs and
   Border Protection (CBP) and the Canada Border Services Agency to facilitate the Automated
   Exchange of Lookouts and the Exchange of Advance Passenger Information.

3. All records, including Privacy Act notices, which discuss or describe the use of personally-
   identifiable information by the CBP (or its predecessors) for purposes of screening air and sea
   travelers.

4. All System of Records Notices (SORNs) that discuss or describe targeting, screening, or
   assigning "risk assessments" of U.S. citizens by CBP or its predecessors.

5. All records that discuss or describe the redress that is available to individuals who believe that the
   ATS contains or utilizes inaccurate, incomplete or outdated information about them.

6. All records that discuss or describe the potential consequences that individuals might experience
   as a result of the agency's use of the ATS, including but not limited to arrest, physical searches,
   surveillance, denial of the opportunity to travel, and loss of employment opportunities.

7. All records that discuss or identify the number of individuals who have been arrested as a result
   of screening by the ATS and the offenses for which they were charged.

8. All complaints received from individuals concerning actions taken by the agency as a result of
   ATS "risk assessments" or other information contained in the ATS, and the agency's response to
   those complaints.

9. All records that discuss or describe Section 514 of the Department of Homeland Security Appropriations Act, 2007, P.L. 109-295 (H.R. 5441) and its prohibition against the development or testing of "algorithms assigning risk to passengers whose names are not on Government watch lists."

10. All records that address any of the following issues:

   a. Whether a system of due process exists whereby aviation passengers determined to pose a threat are either delayed or prohibited from boarding their scheduled flights may appeal such decision and correct erroneous information contained in the ATS;

   b. Whether the underlying error rate of the government and private databases that will be used in the ATS to assign a risk level to an individual will not produce a large number of false positives that will result in a significant number of individuals being treated mistakenly or security resources being diverted;

   c. Whether the agency has stress-tested and demonstrated the efficacy and accuracy of all search tools in the ATS and has demonstrated that the ATS can make an accurate predictive assessment of those individuals who may constitute a threat;

   d. Whether the Secretary of Homeland Security has established an internal oversight board to monitor the manner in which the ATS is being developed and prepared;

   e. Whether the agency has built in sufficient operational safeguards to reduce the opportunities for abuse;

   f. Whether substantial security measures are in place to protect the ATS from unauthorized access by hackers or other intruders;

   g. Whether the agency has adopted policies establishing effective oversight of the use and operation of the system;

   h. Whether there are no specific privacy concerns with the technological architecture of the system;

   i. Whether the agency has, pursuant to the requirements of section 44903(i)(2)(A) of Title 49, United States Code, modified the ATS with respect to intrastate transportation to accommodate states with unique air transportation needs and passengers who might otherwise regularly trigger a high risk status; and

   j. Whether appropriate life-cycle estimates, expenditure and program plans exist.

We previously indicated in our November 14, 2006 letter, as it pertains to **Item 1**, all Privacy Impact Assessments are made available to the public via the DHS website at www.dhs.gov/xinfoshare/publications. As this information has not yet been provided to DHS for inclusion on the website, we will forward this portion of your request to CBP for processing. In addition, **Items 2 - 10** are also under the purview of CBP. Therefore, I am referring your request to the Acting FOIA Officer for CBP, Rebecca Hollaway, (Mint Annex-5th Floor) 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229, who will forward your request on for processing to the appropriate office within CBP. That office will issue a direct response to you.

Please be advised that our office is making the determinations on any fee or treatment requests. Pertaining to your request for a fee waiver, I have reviewed your November 7, 2006 letter thoroughly and your arguments that EFF is entitled to a blanket waiver of all fees associated with this FOIA request. I have determined that you have not presented a convincing argument that EFF is entitled to a waiver of fees. Other than broad generalizations, you have not demonstrated with the requisite specificity that public interest on this issue exceeds a general level of interest in the operations and activities of a

government entity or how disclosure will enlighten the public on privacy protections and contribute to an understanding of government operations or activities. Additionally, you have not sufficiently revealed how the requested information will be widely distributed, other than the nebulous, "EFF will make the information it obtains under the FOIA available to the public and the media through its website and newsletter…" nor have you presented evidence of a unique capability to educate the public beyond EFF's constituency and similar groups which have the same concerns. For these reasons, I have determined that to furnish the information to EFF at no cost does not outweigh the burden that will be placed on our components in supplying the records. Therefore, I am denying the request for a waiver of fees.

Provisions of the Act allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to media requestors. As a media requestor you will be charged 10-cents a page for duplication, although the first 100 pages are free. As the duplication fees are likely to exceed the $25.00 minimum, we need a fee payment commitment by December 29th. We initially indicated that each DHS component would make independent determinations on your various treatment requests. Please be advised that our office is making the overall determinations on these issues.

As it relates to your request for expedited treatment, your request is denied. Pursuant to 5 U.S.C. §§552 (a)(6)(E)(i), each agency shall promulgate regulations providing for expedited processing of records. Accordingly, §5.5(d) of the DHS Interim FOIA and Privacy Act regulations, 6 C.F.R. Part 5, addresses the Department's criteria for granting expedited treatment. You do not qualify for either category. Clearly, the lack of expedited treatment in this case will not pose an imminent threat to the life or physical safety of an individual. In addition, you are not primarily engaged in the disseminating of information to the public, nor have you detailed with specificity why you feel there is an urgency to inform the public about this topic. This urgency would need to exceed the public's right to know about government activity generally. Finally, you did not offer any supporting evidence of public interest that is any greater than the public's general interest in personal privacy protection.

You have the right to appeal the determination to deny you a fee waiver or expedited treatment. Should you wish to do so, you must send your appeal within 60 days of receipt of this letter by writing to the following address: Office of the General Counsel, Department of Homeland Security, Washington, D.C. 20528. Your envelope and letter should be marked "Freedom of Information Act Appeal." The implementing Department Regulations establish the criteria under which the FOIA is administered. Copies of the FOIA and Regulations are available at www.dhs.gov.

If you have any questions regarding this matter, please refer to **DHS/OS/PRIV 07-160/Sobel request**. The DHS Privacy Office can be reached at 571-227-3813. Please refer to the above mentioned identifier in any future correspondence.

Sincerely,

Catherine M. Papoi, J.D.
Deputy Chief FOIA Officer
Director, Disclosure & FOIA

Cc:    Rebecca Hollaway, CBP

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
**ELECTRONIC FRONTIER FOUNDATION,**       )
                                                          )
                    Plaintiff,                        )
                                                          )
          v.                                           )    Civil Action No. 06-1988 (ESH)
                                                          )
**DEPARTMENT OF HOMELAND SECURITY,**     )
                                                          )
                    Defendant.                     )
_____)

_____
                                                          )
**ELECTRONIC FRONTIER FOUNDATION,**       )
                                                          )
                    Plaintiff,                        )
                                                          )
          v.                                           )    Civil Action No. 06-2154 (RBW)
                                                          )
**DEPARTMENT OF HOMELAND SECURITY,**     )
                                                          )
                    Defendant.                     )
_____)

**O R D E R**

UPON CONSIDERATION of plaintiff's motion to consolidate the above-captioned

actions, and the entire record, it is this ___ day of January, 2007;

ORDERED that plaintiff's motion is granted, and it is;

FURTHER ORDERED that the above-captioned actions are consolidated for all

purposes.

_____
**UNITED STATES DISTRICT JUDGE**

# Exhibit D

Motion to Consolidate

*Electronic Frontier Foundation v. Department of Homeland Security*

**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

November 7, 2006

**BY FACSIMILE — (571) 227-1125**

Catherine M. Papoi
Acting Director
Departmental Disclosure & FOIA
Department of Homeland Security
Arlington, VA 22202

RE:  **Freedom of Information Act Request and**
**Request for Expedited Processing**

Dear Ms. Papoi:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Department of Homeland Security ("DHS") on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

On November 2, 2006, DHS published a Privacy Act notice in the Federal Register concerning what it described as a "new system of records" identified as the Automated Targeting System ("ATS"). 71 FR 64543. According to the notice, "[t]he new system of records will be effective December 4, 2006, unless comments are received that result in a contrary determination." *Id.*

We are seeking the following agency records (including, but not limited to, electronic records) concerning the ATS:

1. all Privacy Impact Assessments prepared for the system;

2. a Memorandum of Understanding executed on or about March 9, 2005, between Customs and Border Protection ("CPB") and the Canada Border Services Agency to facilitate the Automated Exchange of Lookouts and the Exchange of Advance Passenger Information; and

3. all records, including Privacy Act notices, that discuss or describe the use of personally-identifiable information by CPB (or its predecessors) for purposes of "screening" air and sea travelers.[1]

---

[1] To assist you in searching for records responsive to this portion of our request, we note that an Associated Press article dated November 3 (attached hereto) quoted DHS spokesman Russ Knocke as saying that "screening for air and sea travelers has been in place since the 1990s."

**Request for Expedited Processing**

This request warrants expedited processing because it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity," and the request is made by "a person primarily engaged in disseminating information." 6 CFR § 5.5(d)(1)(ii).

First, there is substantial public interest in the Department's use of the ATS to assign "risk assessments" to American citizens. A search conducted on Google News indicates that since the Federal Register notice was published five days ago, 58 articles have been published that discuss the system and the privacy issues it raises (see first page of search results, attached hereto). The published articles include coverage by the Washington Post and the Associated Press (see attached articles).

Further, there is an "urgency to inform the public" about the potential privacy implications of the ATS because the Department has solicited public comments and announced that "[t]he new system of records will be effective December 4, 2006, unless comments are received that result in a contrary determination." 71 FR 64543. Indeed, it is difficult to imagine circumstances where there would be a greater "urgency to inform the public" than when an agency has solicited public comment on a significant issue, set a short deadline for the submission of comments, and stated its intention to go forward with its proposal "unless comments are received that result in a contrary determination."

The purpose of this request is to obtain information directly relevant to DHS's Privacy Act notice and the practices it describes (which will affect tens of millions of American citizens). There is clearly "an urgency to inform the public" about the Department's policies with respect to this issue in order to facilitate full and informed public comment on the issue prior to the December 4 deadline the Department has imposed.

Further, as I explain below in support of our request for "news media" treatment, EFF is "primarily engaged in disseminating information."

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a representative of the news media pursuant to the FOIA and 6 C.F.R. § 5.11(b)(6).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[2] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[3] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/pqShowGsReport.do?npoId=561625 (last visited Oct. 16, 2006).
[3] *Id.*

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 40,681,430 hits in September 2006 — an average of 56,501 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 538,297 hits in September 2006.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 1,300 times from EFF's web site last month.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 6 C.F.R. § 5.11(k). To determine whether a request meets this standard, Department of Homeland Security components determine whether "[d]isclosure of the requested information is likely to contribute

---

[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 6 C.F.R. §§ 5.11(k)(i), (ii). This request clearly satisfies these criteria.

First, DHS's handling of personal data and the assignment of "risk assessments" concern "the operations or activities of the government." 6 C.F.R. § 5.11(k)(2)(i). DHS is a government agency, and its use of passenger data to make determinations about travelers unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 6 C.F.R. § 5.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on the manner in which DHS uses personal data to screen travelers entering or exiting the United States, as well as the subsequent retention, uses, and disclosures of that data.

Third, the requested material will "contribute to public understanding" of DHS's handling of personal data. 6 C.F.R. § 5.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of DHS's data privacy policies, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of how DHS handles personal data. 6 C.F.R. § 5.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the contours of the ATS process, as well as contribute to the public debate about the adequacy of the privacy policies surrounding the system.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 6 C.F.R. § 5.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact me at (202) 797-9009 x. 10. As the FOIA provides, I will anticipate a determination on our expedition request within 10 calendar days.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Sincerely,

David L. Sobel
Senior Counsel

4