**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1988 (ESH) |
| ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO AMEND THE COURT'S APRIL 27, 2007 SCHEDULING ORDER
AND FOR A STAY OF PROCEEDINGS**

On April 24, 2007, following a status conference, the Court issued a scheduling order

providing, *inter alia*, that defendant Department of Homeland Security ("DHS") must complete

its processing of the Freedom of Information Act ("FOIA") request at issue in this case no later

than November 1, 2007.[1]  On October 18, 2007 – just two weeks before the court-ordered

completion date – DHS moved to "amend" the scheduling order and requested an open-ended

stay of proceedings that would, at the very least, extend well into 2008 and likely beyond.  For

the reasons set forth below, plaintiff Electronic Frontier Foundation ("EFF") opposes defendant's

motion.

**Statement of Facts**

This case involves defendant DHS's handling of a FOIA request submitted by plaintiff

EFF more than one year ago seeking the disclosure of agency records relating to the U.S.

government's negotiations with the European Union concerning the transfer of airline passenger

---

[1]  The Court further directed DHS to file a *Vaughn* index on or before November 19, 2007, and a
motion for summary judgment on December 19, 2007, with plaintiff's cross-motion for summary
judgment to be filed on January 18, 2008.  Minute Order (April 27, 2007).

data and the attendant privacy issues that have generated a great deal of international

controversy.[2]  On April 2, 2007, the Court issued a memorandum and order denying EFF's

motion for expedited processing of its FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II),

and setting a status conference for April 27, 2007.  Memorandum Opinion and Order (April 2,

2007) at 8.

Following the status conference, the Court issued a scheduling order that had been

proposed by defendant and that was "based on defendant's belief that the processing of

plaintiff's FOIA request would proceed from that point onward in a more or less routine

fashion."  Defendant's Memorandum in Support of its Motion to Amend the Court's April 27,

2007 Scheduling Order and for a Stay of Proceedings ("Def. Mem.") at 2.  The court's order

required DHS to produce responsive documents on a rolling basis, every two weeks, beginning

on June 1, 2007, with production of documents to be completed by November 1, 2007.  Minute

---

[2] By letter transmitted to DHS on October 20, 2006, EFF requested DHS records concerning a
renegotiated agreement between the U.S. and the EU, and the handling of "passenger name
record" data under "the 2004 Undertakings" (a set of representations reflecting how DHS would
collect, maintain, and secure the passenger data).  Specifically, EFF requested the following
agency records (created between May 30, 2006 and the date of the request):

> 1) emails, letters, reports, or other correspondence from DHS officials to
> European Union officials concerning the transfer and use of passenger data from
> air carriers to the U.S. for prescreening purposes;
>
> 2) emails, letters, statements, memoranda, or other correspondence from DHS
> officials to U.S. government officials or employees interpreting or providing
> guidance on how to interpret the Undertakings;
>
> 3) records describing how passenger data transferred to the U.S. under the
> temporary agreement is to be retained, secured, used, disclosed to other entities,
> or combined with information from other sources; and
>
> 4) complaints received from EU citizens or official entities concerning DHS
> acquisition, maintenance and use of passenger data of EU citizens.

Attachment A to the Declaration of Vania T. Lockett ("Lockett Decl.") at 3.

Order (April 27, 2007).  Briefing on dispositive motions is to be completed by February 18, 2008.  *Id*.

Now, as its November 1 processing deadline arrives, defendant DHS seeks to "amend" the scheduling order and stay proceedings for an indefinite and open-ended period of time.  In support of its eleventh-hour request, the agency cites a litany of "unanticipated circumstances that have arisen subsequent to the Court's entry of the Scheduling Order."  Def. Mem. at 1. These include:

- On the very day that the agency represented to the Court that it would be able to complete its processing of plaintiff's request by November 1, the Office of Policy (which apparently possesses the vast majority of responsive material) "determined that [the three key officials possessing responsive records] would not have time to search their computers for potentially responsive records while simultaneously conducting negotiations on the final agreement with the EU."  Lockett Decl., ¶ 20.

- DHS components are located in various locations in the National Capital Area; the Privacy Office (which coordinates FOIA processing) is in Rosslyn, Virginia; the Office of Policy and the Office of the General Counsel are located in Washington, DC; TSA's Office of Chief Counsel is in Crystal City, Virginia.  "Consequently, coordinating the review and release of documents has been challenging, sometimes requiring physical travel from one location to another."  *Id*., ¶ 21.

- "The processing of this request by EFF has also been affected by the processing of another request by EFF for documents pertaining to the Automated Targeting System (ATS). Many of the same personnel within DHS are involved with responding to both requests, both of which are being litigated."  *Id*., ¶ 22.

- "The most significant unanticipated development . . . is a recommendation from the Deputy Assistant Secretary for Policy to the Secretary to classify a significant number of responsive documents."  The agency asserts that it was "not aware, at the time we indicated we could complete the processing of the FOIA request by November 1, 2007, that the Office of Policy  . . . would seek to have these documents classified."  In fact, it

was not until "October 12, 2007, [that] officials within the Office of Policy formally

requested that the Secretary classify a large portion of potentially responsive records."

*Id.*, ¶ 25.

- "The Office of Policy recognized the need for a FOIA processor of its own and attempted

to hire one in June [eight months after EFF submitted its FOIA request and two months

after the agency made its representations to the Court], but the first candidate withdrew

and the eventual selectee did not arrive until October 15, 2007." Def. Mem. at 10-11

(citation omitted).

## Argument

### I. The Applicable Legal Standard

As defendant notes, Def. Mem. at 15, the FOIA provides that a court may "retain

jurisdiction and allow the agency additional time to complete its review of [requested] records"

when "the Government can show exceptional circumstances exist and that the agency is

exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). The D.C.

Circuit has long held that the statutory provision only applies, however, "when an agency . . . is

deluged with a volume of requests for information vastly in excess of that anticipated by

Congress, [and the agency's] existing resources are inadequate to deal with the volume of such

requests within the [applicable] time limits . . . ." *Open America v. Watergate Special

Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976).

The agency's burden became even more stringent in 1996, when "Congress tightened the

standard for obtaining a stay by defining the term 'exceptional circumstances' so as to exclude

any 'delay that results from a predictable agency workload of requests . . . unless the agency

demonstrates reasonable progress in reducing its backlog of requests.'" *Wilderness Society v.

Dep't of Interior*, Case No. 04-cv-0650, 2005 U.S. Dist. LEXIS 20042, at *31 (D.D.C. Sept. 12,

2005) (*quoting* 5 U.S.C. § 552(a)(6)(C)(ii)). In *Wilderness Society*, this Court summarized the

applicable four-part standard an agency must satisfy:

> Under D.C. Circuit law, a stay pursuant to [the statute] and the *Open America* doctrine may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; *and* (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; *and* (3) when the agency shows that it is exercising 'due diligence' in processing the requests; *and* (4) the agency shows 'reasonable progress' in reducing its backlog of requests."

*Id*. at *31-*32 (citations omitted; emphasis in original); *see also Elec. Frontier Found. v. Dep't of Justice*, Case No. 06-cv-1708, 2007 U.S. Dist. LEXIS 33396, at *24 (D.D.C. May 7, 2007) (same).

## II.  The Agency's Failure to Satisfy the Standard

### A.  DHS has not Shown that "Exceptional Circumstances" and "Due Diligence" Exist on an Agency-wide Basis

Here, defendant DHS does not even attempt to make the requisite showing.  The agency's discussion of "exceptional circumstances" and "due diligence" focuses solely upon the obstacles it claims to have encountered in processing *the one request at issue in this case*.  There is not even a suggestion that the agency is "burdened with an unanticipated number of FOIA requests," that it lacks adequate resources "to process the requests within the [statutory] time limits," that "it is exercising 'due diligence' in processing the requests," or that the agency can show "reasonable progress" in reducing a backlog of requests.  The inadequacy of defendant's stay motion is evident when compared with the type of showing this Court has found to be sufficient. Thus, in *Center for Public Integrity v. Dep't of State*, Case No. 05-cv-2313, 2006 U.S. Dist. LEXIS 22281 (D.D.C. April 24, 2006), the Court recited the following facts (among others) in finding that the agency was entitled to a stay:

> In 2002, the State Department had a backlog of over 6,000 FOIA requests.  In response, the Department undertook several backlog reduction initiatives, including a temporary backlog reduction task force supported by $4 million in

funding and 23 full-time staff for a two-year period.  The Department also has
upgraded the technology used in its information management and access
programs, including a comprehensive database of communications with overseas
posts and an electronic inventory of responses to prior FOIA requests, as well as
access to documents through the Internet.

By the end of fiscal year 2004 (when the task force term was complete), [agency
processors] had completed more than 11,500 requests, and reduced the
Department's overall FOIA backlog from 6,214 to fewer than 2,000 cases.  The
Department's backlog has risen since then, however, to 3,400 requests as of
February 24, 2006.  In [the agency declarant's] view, the increase was due to a
number of unforeseen circumstances.  First, in fiscal year 2004, the number of
new direct FOIA and Privacy Act requests increased by 19 percent, and in fiscal
year 2005, those numbers increased by an additional 26 percent over the previous
year, resulting in a 50 percent increase in that two-year period.  Excluding the
Privacy Act requests, the FOIA requests alone increased from 3,438 to 3,951 in
fiscal year 2004 (an increase of 14.9 percent), and then to 4,602 in fiscal year
2005 (an increase of 16.5 percent).

*Id*. at *7-*10 (footnotes and citations omitted).[3]

Even if defendant DHS *did* attempt to show a backlog resulting from an "unanticipated"

volume of requests and "inadequate" resources to cope with the onslaught, it clearly would be

unable to demonstrate "reasonable progress" in reducing its backlog.  In July 2006, pursuant to

---

[3]  Similarly, the Court in another case noted the factors supporting a stay:

[T]he FBI receives an average of 700 FOIA requests each month, and due to the
rise in litigation and appeals over the last twenty years, the FBI's FOIA backlog
jumped from its 1985 level of 4,736 requests to a high of 16,244 requests on
December 31, 1996.  Due to this backlog, the agency sought additional funding
from Congress, which provided it with over 368 new employees in the 1997 and
1998 budgets.  Due to this influx of staffing and continued good faith
responsiveness, the FOIA backlog has fallen from the high of 16,244 on
December 31, 1996 to the August 30, 2004 figure of 1,763 requests currently
outstanding -- a reduction of roughly 89%.  The FBI anticipates that future totals
will reflect a continuation of this downward trend.  As such, while the FBI
currently faces a large backlog of requests, the recent reduction of that
unanticipated backlog certainly constitutes "reasonable progress" as required by
Section 552(a)(6)(C)(ii).

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, Case No. 02-cv-0063, 2005 U.S. Dist. LEXIS 18876
(D.D.C. Aug. 31, 2005), at *12-*13 (citations omitted).

the requirements of Executive Order 13,392, DHS issued a FOIA "improvement plan" describing

FOIA compliance efforts within the Department.[4]  In a preamble, DHS Deputy Secretary

Michael P. Jackson conceded that the agency's report "fails to present effective plans for

improvement to the backlog that has arisen over the last 3 years.  The proposed improvement

plans – produced by the offices and component agencies of the Department – *were insufficiently*

*aggressive and non-responsive to such a degree that they could not be relied on to reduce the*

*serious and growing FOIA backlog problem at the Department in a timely fashion*."  Department

of Homeland Security Freedom of Information Act Operational Review and Improvement Plan

Report (2006) (attached hereto as Exhibit A) at i (emphasis added).  The Deputy Secretary

acknowledged, *inter alia*,  that "[t]he problems inherent in our current approach are . . .

managerial and operational at virtually all the agencies and offices.  Although a factor, the lack

of adequate resources is not the only contributor to the backlog growth."  *Id.*  He directed that "a

revised plan be produced within the next 90 days."  *Id.*

The Deputy Secretary found the contents of the "revised report" to be equally damning,

concluding in its preamble that "[t]he plans presented in this report are *still* insufficiently

aggressive."  Department of Homeland Security Freedom of Information Act Program Revised

Operational Improvement Plan Report (2006) (attached hereto as Exhibit B) at i (emphasis

added).  Based upon the Department's own assessment, it is clear that the agency cannot show

"reasonable progress" in reducing any backlog of FOIA requests that it might claim in support of

an *Open America* stay.

---

[4] The requirements of the Executive Order, as implemented by the Department of Justice, are set
forth in DOJ's "FOIA Post: Executive Order 13,392 Implementation Guidance" (*available at*
http://www.usdoj.gov/oip/foiapost/2006foiapost6.htm).

**B. DHS has not Shown "Exceptional Circumstances"
or "Due Diligence" with Respect to Plaintiff's Request**

It is clear that an *Open America* stay is appropriate only where there is a systemic,

agency-wide showing of "exceptional circumstances" and "due diligence."  *See, e.g., Open*

*America*, 547 F.2d at 616 ("when an agency . . . is deluged with a volume of requests . . .");

*Wilderness Society*, 2005 U.S. Dist. LEXIS 20042, at *32 ("the agency shows that it is exercising

'due diligence' in processing the requests").  However, even assuming that the requisite showing

could be made in the context of *one specific request*, as defendant attempts to do here, there is no

way to characterize the circumstances defendant cites as "exceptional" or the agency's efforts as

"diligent."  Indeed, the only "exceptional" circumstance present in this case is the utter lack of

diligence with which the agency has handled EFF's request.

Contrary to defendant's suggestion, there is nothing exceptional or unusual about the fact

that agency officials have other duties and responsibilities in addition to their legal obligations to

comply with FOIA requests in a timely fashion.  It is thus unavailing for DHS to seek a stay on

the ground that three officials in the Office of Policy did "not have time to search their

computers for potentially responsive records while simultaneously conducting negotiations on

the final agreement with the EU."  Lockett Decl., ¶ 20.  Notably, plaintiff's FOIA request had

been pending before the agency for *more than six months* when the Office of Policy finally

"determined" that the officials would "not have time."  *Id.*

The cavalier attitude of the Office of Policy and its officials is reflected in what defendant

describes as "[t]he most significant unanticipated development" supporting its request for an

*Open America* stay – the belated decision of the Deputy Assistant Secretary for Policy to

recommend that the Secretary "classify a significant number of responsive documents."  *Id.*, ¶

25.  It was not until October 12, 2007 – a full year after the Department's receipt of plaintiff's

request – that the Office of Policy "formally requested" that the material be classified. Were the Court to countenance such dilatory action, and somehow find it consistent with an exercise of "due diligence" in the processing of a FOIA request, the *Open America* standard would be rendered meaningless.[5]

The "other unanticipated problems" that defendant cites likewise fall far short of the type of showing this Court requires to justify a stay. For instance, the agency claims that its "resources for processing plaintiff's FOIA request for records relating to the PNR agreements have been diverted by the need to process plaintiff's related FOIA request for records relating to the Automated Targeting System (ATS)." Def. Mem. at 21 (citation omitted). As noted, DHS has not asserted that it is "burdened with an unanticipated number of FOIA requests," *Wilderness Society*, and thus hampered by a backlog of requests. Indeed, the agency's citation of only *one* other request as the basis for its claim of "diverted" resources underscores the fact that it has not presented evidence of the sort of backlog the courts have recognized as warranting the issuance of a stay.[6]

The agency also argues that "plaintiff's refusal to limit the scope of its request in response to defendant's proposal to exclude drafts from among those records that must be

---

[5] Defendant asserts that the "circumstances that would justify granting an agency additional time to process a FOIA request include '. . . the amount of classified material,'" Def. Mem. at 15 (citation omitted), suggesting that the Office of Policy's eleventh hour recommendation that the Secretary "classify a significant number of responsive documents" somehow entitles the agency to a stay. That argument might have been persuasive a year ago if the agency had quantified the amount of responsive material that actually *was* classified. In fact, the agency is still not able to state that *any* of the material is currently classified, let alone identify "the amount of classified material."

[6] The agency's claim that "processing of plaintiff's FOIA request has been slowed by the need to process plaintiff's other FOIA request for records relating to the Automated Targeting System," Def. Mem. at 12, suggests a belief that FOIA requesters are somehow subject to a quota of requests, and that a requester with multiple pending complaints should not be heard to complain about long processing delays. There is, of course, no legal basis for such an approach.

produced is another factor that must 'be considered as a factor in determining whether exceptional circumstances exist' [pursuant to 5 U.S.C. § 552(a)(6)(C)(iii)]." *Id.* (citation omitted). First of all, as *Open America* and its progeny make plain, the statutory provision on which DHS attempts to rely is applicable only where an agency has met its burden of showing that it has been "deluged" with an unanticipated flood of requests – a burden that the agency has failed to meet here. In any event, the cited statutory subsection (in language defendant omits) refers to a "[r]efusal by a person to *reasonably* modify the scope of a request . . . after being given an opportunity to do so by the agency . . . ." 5 U.S.C. § 552(a)(6)(C)(iii) (emphasis added).

Here, defendant's counsel asked in a telephone conversation "whether plaintiff would be willing to limit the scope of its FOIA request by excluding multiple drafts of agency records from its request. Plaintiff's counsel indicated that plaintiff would not limit the scope of its request in such a manner." Declaration of John R. Coleman, ¶ 2. If defendant means to suggest that EFF is unwilling to entertain *reasonable* proposals put forward by the agency, the record simply does not support such a suggestion. As defendant noted earlier in this litigation, "[o]n January 23, 2007, DHS sent a letter to plaintiff proposing ways to limit the scope of the ATS request [and] [p]laintiff responded on February 15, 2007 with an agreement to limit parts of the request." Defendant's Memorandum in Support of its Motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment at 17, n.13. Indeed, as plaintiff's February 15, 2007, letter to defendant's counsel demonstrates, plaintiff has, from the outset, been willing to consider reasonable and clearly articulated proposals from the agency to

narrow the scope of its requests and to limit the requests when appropriate. *See* letter from

David L. Sobel to John C. Coleman, February 15, 2007 (attached hereto as Exhibit C).[7]

  Finally, defendant DHS cites "staffing problems" in support of its request for an open-

ended stay, Def. Mem. at 23, noting, *inter alia*, that "[t]he Office of Policy recognized the need

for a FOIA processor of its own and attempted to hire one in June, but the first candidate

withdrew and the eventual selectee did not arrive until October 15, 2007." Def. Mem. at 10-11

(citation omitted). This Court has made clear, however, that it "will not get involved in

defendants' personnel and project management difficulties" when considering motions for *Open*

*America* stays. *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259

(D.D.C. 2005). In any event, the fact that the Office of Policy waited eight months after EFF

submitted its FOIA request (and two months after the agency made its representations at the

April 27 status conference) before it "recognized the need for a FOIA processor" is yet another

piece of evidence demonstrating that defendant DHS has utterly failed to exercise "due

diligence" in its handling of FOIA requests generally, and EFF's request in particular.[8]

---

[7] The correspondence between the parties concerning the ATS request, compared with the telephone conversation defendant seeks to rely upon here, is a more reliable medium for determining the "reasonableness" of the parties' positions. Thus, plaintiff explained in its February 15 letter why it was declining the agency's invitation to remove "draft" documents from the scope of its FOIA request:

> We are unable to consent to the agency's suggestion that the scope of the request be limited to "final documents." We believe that it is likely that "draft" documents may contain factual material that must be segregated for release even if "predecisional" material in such documents may be properly withheld.

Exhibit C at 1. The same consideration obviously applies to any "draft" documents at issue here.

[8] The D.C. Circuit has recognized that the FOIA's legislative history requires an agency to have exercised "due diligence" *from the outset* in order to qualify for the kind of relief DHS seeks here. *Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 n.3 (D.C. Cir. 1990) ("The court [has] authority to allow the agency additional time to examine requested records in exceptional

**Conclusion**

For the foregoing reasons, defendant's motion to amend the scheduling order and for a stay of proceedings should be denied.

Respectfully submitted,

_/s/ David L. Sobel_
DAVID L. SOBEL
D.C. Bar No. 360418
ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009
(202) 797-9009

MARCIA HOFMANN
D.C. Bar No. 484136
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333

Counsel for Plaintiff

---

circumstances where the agency was exercising due diligence in responding to the request *and had been since the request was received*.") (quoting H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 11 (1974)) (emphasis added).  By no stretch of the imagination can it be argued that the Office of Policy has been diligent in its handling of EFF's request "since the request was received."

# Exhibit A

**Plaintiff's Opposition to Defendant's Motion to Amend the Court's April 27, 2007
Scheduling Order and for a Stay of Proceedings**

***Electronic Frontier Foundation v. Department of Homeland Security*,
Civil Action No. 06-1988 (ESH)**



# Department of Homeland Security

# Freedom of Information Act
# Operational Review
# and Improvement Plan Report

# 2006

This Freedom of Information Act (FOIA) operational review and improvement plan reports on the Department's current FOIA operations and the plans of the Department's components for the improvement of those operations.  Although the report is a good summary of the status of the program, it fails to present effective plans for improvement to the backlog that has arisen over the last 3 years.   The proposed improvement plans -- produced by the offices and component agencies of the Department -- were insufficiently aggressive and non-responsive to such a degree that they could not be relied on to reduce the serious and growing FOIA backlog problem at the Department in a timely fashion.

I have directed, therefore, that a revised plan be produced within the next 90 days.  At that time, we will share the revised action plan with the Department of Justice.  The problems inherent in our current approach are structural, particularly at the United States Citizenship and Immigrations Service, and managerial and operational at virtually all the agencies and offices.  Although a factor, the lack of adequate resources is not the only contributor to the backlog growth.  More detailed analysis of each office's input, output and staffing are needed.  These analyses will form the core of the 90-day review.  Our goal will be substantially to eliminate the FOIA backlog by the end of 2007.

Michael P. Jackson
Deputy Secretary

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 1


## A. OVERVIEW OF THE DHS FREEDOM OF INFORMATION ACT PROGRAM

The Department of Homeland Security (DHS) is responsible for leading the unified national effort to secure America by preventing and deterring terrorist attacks and protecting against and responding to threats and hazards to the nation. DHS ensures safe and secure borders, welcomes lawful immigrants and visitors, and promotes the free flow of people and commerce across the borders of the United States. To accomplish its mission, the Department is organized into directorates and components, which are described more fully in Appendix A. Like the organizational structure of the Department itself, DHS Freedom of Information Act and Privacy Act (PA)[1] operations are centralized for purposes of policy and programmatic oversight and decentralized for purposes of operational implementation.

The Chief Privacy Officer for DHS serves as the Chief FOIA Officer for the Department (hereinafter Chief FOIA Officer) and has agency-wide policy responsibility for efficient and appropriate compliance with the FOIA. The Chief FOIA Officer, however, does not currently have direct operational management authority over component and Directorate FOIA offices. A Director for Departmental Disclosure and FOIA reports to the Chief FOIA Officer, heads up the headquarters FOIA operation and team, and assists the Chief FOIA Officer to ensure that FOIA policies are implemented throughout the Department. The Director for Departmental Disclosure and FOIA also is responsible for handling FOIA/PA requests for records maintained by DHS senior management offices. The Chief Counsel to the Privacy Office provides legal review on particularly complex or sensitive FOIA requests for headquarters and assists in counseling component and directorate FOIA offices.

The FOIA Program at this new Department was created at the same time as the Department stood up, with limited resources available to implement a full-fledged consolidated operation. However, most of the 22 component agencies that were merged into DHS had pre-existing, established FOIA operations. Those operations continue today with increasing collaboration department-wide on policy and program issues through regular meetings of FOIA/PA managers that are hosted by the Chief FOIA Officer. FOIA/PA Officers within components and directorates are responsible for compliance with DHS FOIA policy guidance within their components and operationally decide whether to establish a centralized or decentralized FOIA program at the component or directorate level. The DHS Organizational Chart is provided at Appendix B. Names and contact information for DHS FOIA Officers are provided at Appendix C.

The FOIA Program has successfully established the FOIA processing policy for all of the DHS components and programs including establishment of the Department's interim FOIA regulations, creation of the statutorily-mandated FOIA website and reading room, and development of electronic tracking for requests.

---

[1]    FOIA/PA and FOIA are, in most cases, used interchangeably in this report.

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 2

As a relatively new agency of significant size and scope, DHS programs and policies have been and continue to be the subject of numerous Freedom of Information Act requests because of high public interest in its operations. In Fiscal Year 2003[2] incoming FOIAs totaled 161,107; 2004 requests rose to 168,882; and in 2005, incoming requests numbered 162,949. The current pace, to date, of 2006 requests is running ahead of the 2005 rate.

While generating many inquiries because of its new status and mission, DHS also began its operations with an inherited FOIA backlog by virtue of the fact that several significant existing agencies were merged into DHS: the Coast Guard, Secret Service, United States Customs Service, Immigration and Naturalization Service, Federal Emergency Management Agency, Transportation Security Administration, Federal Protective Service, and the Federal Law Enforcement Training Center. At the time of the merger of these agencies into DHS, all maintained an FOIA backlog, ranging in size from 25,515 for the Customs Service to 1 for the Federal Training Center.

A number of the components of the Department have experienced a significant growth in the number of incoming FOIA requests and a rise in their backlogs. In 2005, for example, the DHS Privacy Office, which processes FOIA requests for the senior management offices of the Department, received 849 requests, an increase of more than 300 percent from the 282 requests in 2003. However, one component of DHS, the United States Citizenship and Immigration Services (USCIS), receives the vast majority of all FOIA requests to the Department and, similarly, holds the majority of the Department's FOIA backlog. In fact, USCIS is the source of nearly all the growth in the Department's FOIA backlog over the last 3 years.

From 2003 to 2005, the number of total requests to the Department has held relatively constant as seen in the figures above. During that time, however, the backlog has grown from 29,000 at year-end 2003, to 46,000 in 2004, to 83,000 at the end of 2005. Of this 54,000 growth in the request backlog, roughly 50,000 occurred at USCIS, from a backlog of 25,326 at the end of 2003 to 74,941 at the end of 2005.

Our analysis of the USCIS FOIA operations pointed up several areas for review including the levels of funding and staffing, and the beneficial application of technology enhancements. The most significant sources of the growing backlog problem however, is concentrated in two areas: the use of the FOIA process as a source of information for genealogy studies, and its use as a means of discovery in connection with immigration enforcement and court proceedings. USCIS has issued two notices of proposed rulemaking to positively address these unique challenges. The first rule would take requests for genealogy information out of the FOIA request process by channeling such requests into a newly established administrative information process. The second rule would establish a third track for FOIA processing for litigation-related information requests, in addition to the two existing tracks for simple and complex FOIA requests that are currently used. The separate third track may allow both USCIS and the Department

---

[2] All references to years in the report refer to Federal fiscal years.

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 3

to target better the backload and complete resolutions on these unique requests to CIS, which now are believed to make up the vast majority its requests.

Overall, despite the unique challenges faced by USCIS and general Departmental resource constraints, staff completed a substantial workload of 126,126 FOIA requests and 885 appeals. The vast majority of these were answered by release of part or all of the records requested. The Department also implemented an improved, customer-friendly FOIA webpage and appointed FOIA Officers to additional DHS Headquarters' programs to improve customer service.

In response to Executive Order 13392, Improving Agency Disclosure of Information, the Department established on March 17 of this year its primary FOIA Requester Service Center and FOIA Public Liaisons were established for every FOIA component program to assist with public inquiries to the Center. Individual components have been tasked to similarly augment their FOIA information hot-lines to provide enhanced responsiveness to public inquiries about their FOIA programs. To increase public awareness of FOIA, the Privacy Office also sponsored a public workshop on April 5, 2006 on *Transparency and Accountability: The Use of Personal Information Within the Government*, and a major focus of the program explored the Freedom of Information Act and its implementation, along with the special requirements of the Executive Order. The Privacy Office had been meeting regularly with representatives from the Access Community and Immigration Attorneys and Advocates and continues to do so on FOIA matters.

While DHS FOIA staff clearly work diligently, a recent review of FOIA operations identified areas where further improvements could be made, especially in light of the growing backlog. In order to prepare the FOIA improvement plan, the DHS Chief FOIA Officer tasked all Departmental directorates and components to complete operational assessments and submit review summaries and improvement plans. The following sections of this report outline the review undertaken, the improvement goals established, and the milestones for measuring FOIA improvement efforts and Departmental success.

## B. AREAS SELECTED FOR REVIEW

All DHS FOIA Officers were given a template for preparing a summary report on their current FOIA operations. The resulting reports provided an overview of the FOIA organizational structure within the DHS component or program, including budget and staffing figures, and information on FOIA operations. Much of the data is reported in the DHS FY 2005 annual report, posted on the Privacy Office and FOIA website. FOIA Officers were also asked to provide a request processing overview, including any field operations and administrative appeal functions. The remainder of the reports focused on an assessment of FOIA operations, including:

- the current FOIA case backlog,

- aspects of case processing such as implementation of multi-track processing, use of available FOIA-specific technology, and expedited request processing,

- the availability of component-wide employee FOIA training, and

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 4

- utilization of the component's FOIA website.

The concluding portions of these operations reports contained each component or office's recommendations for improvements that were then compiled into this DHS improvement plan.

## C.  SUMMARY OF RESULTS

The operations reports revealed that backlog issues and resource constraints are a significant concern throughout the agency.  Processing FOIA requests is something that all agencies must do in addition to carrying out their missions and often the number of people who can be made available for this work is inadequate to the amount of work that is generated.  USCIS, for example, has 107 staff currently available to process 140,000 requests, which means that each FOIA processor is responsible annually for over 1,300 responses to requests.

Backlog issues are also a concern for other DHS components and offices.  ICE's organizational structure calls for 11 FOIA staff at the headquarters level, but many of these positions have been subject to turnover and have remained unfilled during critical times.  Even a component as small as FLETC has a backlog because of a long-standing unfilled FOIA processor position that requires other FLETC employees to shoulder the workload in addition to their own.  Resource constraints, including a shortage of full-time FOIA processors, and the unpredictable fluctuations in FOIA requests from events such as Hurricane Katrina and its aftermath, have resulted in increased backlog issues for a number of DHS components and offices.

Other common threads among the operations reports include a recognition that technological improvements would increase efficiency, additional emphasis on education and training would ensure consistent processing, and enhancements to public websites could increase customer awareness and knowledge.  These common themes form the basis of the areas chosen for improvement in this and the next fiscal year.

## D.  AREAS SELECTED FOR IMPROVEMENT

The areas identified for improvement over the next two fiscal years are listed below. Following this list in Section E is a tabular presentation of how DHS and its components and offices intend to address these areas.

### 1.  Backlog Reduction

All of the components except for TSA maintain a case backlog of FOIA requests that have not been answered within the statutory 20-day response window. The size of the backlog varies greatly by component, but this is clearly an area of concern for the Department.   All components with a backlog reported that a significant factor contributing to delayed responses is a lack of staffing resources.  Another significant contributor to delayed responses is the lack of response within the component's various program offices to FOIA search requests for documents.

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 5

### 2. Education and Training

Increased education and training can contribute to improvements in the FOIA process at DHS in several important ways. First, a renewed emphasis on the importance of FOIA that is conveyed from the top down to all agency employees will educate employees about the need for them to be active participants in the FOIA program at DHS. Second, education and training can ensure a consistent interpretation of key aspects of the FOIA administrative workload, such as when to grant a fee waiver or when to expedite a request. Consistent interpretation of these requirements benefits the requester community through a greater uniformity of treatment and also benefits DHS FOIA staff who can more quickly make decisions based on common standards. For components using decentralized processing by employees who perform FOIA duties only collaterally, enhanced education and training will also help facilitate consistent and timely processing. Education of the requester community can also help streamline the FOIA process as increased understanding of DHS operations will allow requesters to focus their inquiries and direct them to the appropriate offices in the first instance.

### 3. Technology Improvements to Enhance FOIA Processing and Delivery of Information

Although many DHS components and offices maintain a Web presence for FOIA matters, the operations review demonstrated that DHS can more aggressively use this resource to improve its FOIA operations. This is an effective means to communicate information to the public generally and to FOIA requesters in particular, at a relatively low cost.

### E. SUMMARY OF IMPROVEMENT AREAS

#### 1. Items to be Completed by December 31, 2006

Backlog reduction initiatives to be accomplished include submission of requests and justifications for additional FOIA staff for component offices; completion of surveys on backlog causes and recommendations for cures; and, revision and standardization of FOIA processing operations to streamline their efficiency.

Education and training initiatives to be accomplished consist of ensuring that all component FOIA processors have received at least one session of FOIA/PA training and that procurement of training courses and materials for DHS-wide use is completed. Memoranda from senior DHS leadership will also be distributed prior to the end of calendar 2006 reiterating the importance of FOIA compliance for all DHS employees.

Technology-related initiatives to be accomplished include evaluation of a variety of electronic FOIA processing programs to determine which will increase operational efficiency, and the update and enhancement of websites to increase information content.

#### 2. Items to be Completed by December 31, 2007

By the end of 2007, DHS should have its backlog under control. In addition, training goals should be met, including development and distribution of consistent training

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 6

materials for all components.  Also by this date all FOIA web enhancements should be made.

DHS expects that improving its FOIA operations will be an ongoing effort, but with the dedicated FOIA staff it currently has, augmented by planned new hires and contractors, together with enhanced FOIA learning throughout the Department and a more robust web presence, DHS FOIA operations should be efficient and effective in ensuring full compliance with the statutory mandates of the law.

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 7


**APPENDIX A:  COMPOSITION OF THE DEPARTMENT OF HOMELAND SECURITY**


**Office of the Secretary:** The Office of the Secretary oversees activities with other Federal, State, local, and private entities as part of a collaborative effort to strengthen our borders, provide for intelligence analysis and infrastructure protection, improve the use of science and technology to counter weapons of mass destruction, and to create a comprehensive response and recovery system. Within the Office of the Secretary there are multiple offices that contribute to the overall Homeland Security mission.  These are:


The **Citizenship and Immigration Services Ombudsman** provides recommendations for resolving individual and employer problems with the United States Citizenship and Immigration Services in order to ensure national security and the integrity of the legal immigration system, increase efficiencies in administering citizenship and immigration services, and improve customer service.


The **Office for Civil Rights and Civil Liberties** provides legal and policy advice to Department leadership on civil rights and civil liberties issues, investigates and resolves complaints, and provides leadership to Equal Employment Opportunity Programs.


The **Office of Counternarcotics Enforcement**


The **Office of the Federal Coordinator for Gulf Coast Rebuilding** was created to help assist the region with long-term planning and coordinating the federal government's response to rebuild the Gulf Coast region devastated by Hurricanes Katrina and Rita.


The **Office of the General Counsel**


The **Office of Legislative and Intergovernmental Affairs** serves as primary liaison to members of Congress and their staffs, the White House and Executive Branch, and to other Federal agencies and governmental entities that have roles in assuring national security.

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 8

The **Privacy Office** works to minimize the impact on the individual's privacy, particularly the individual's personal information and dignity, while achieving the mission of the Department of Homeland Security.

The **Office of Public Affairs**

Other Components:

The **Directorate for Management** is responsible for Department budgets and appropriations, expenditure of funds, accounting and finance, procurement, human resources, information technology systems, facilities and equipment, and the identification and tracking of performance measurements.

The **Directorate for Preparedness** works with state, local, and private sector partners to identify threats, determine vulnerabilities, and target resources where risk is greatest, thereby safeguarding our borders, seaports, bridges and highways, and critical information systems.

The **Directorate for Science and Technology** is the primary research and development arm of the Department with the principal responsibility for coordinating and organizing research, development, test, and evaluation (RDT&E) activities in support of the Department of Homeland Security's mission.

The **Domestic Nuclear Detection Office** works to enhance the nuclear detection efforts of Federal, State, territorial, tribal, and local governments, and the private sector. It also works to ensure a coordinated response to such threats.

The **Federal Emergency Management Agency (FEMA)** prepares the nation for hazards, manages Federal response and recovery efforts following any national incident, and administers the National Flood Insurance Program.

The **Federal Law Enforcement Training Center** provides career-long training to law enforcement professionals to help them fulfill their responsibilities safely and proficiently.

The **Office of Inspector General** is responsible for conducting and supervising audits, investigations, and inspections relating to the programs and operations of the Department,

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 9

recommending ways for the Department to carry out its responsibilities in the most effective, efficient, and economical manner possible.

The **Office of Intelligence and Analysis** is responsible for using information and intelligence from multiple sources to identify and assess current and future threats to the United States.

The **Office of Operations Coordination** is responsible for monitoring the security of the United States on a daily basis and coordinating activities within the Department and with Governors, Homeland Security Advisors, law enforcement partners, and critical infrastructure operators in all 50 States and more than 50 major urban areas nationwide.

The **Office for Policy** is the primary policy formulation and coordination component for the Department of Homeland Security.  It provides a centralized, coordinated focus to the development of Department-wide, long-range planning to protect the United States.

The **Transportation Security Administration (TSA)** protects the nation's transportation systems to ensure freedom of movement for people and commerce.

**U.S. Customs and Border Protection (CBP)** is responsible for protecting our nation's borders in order to prevent terrorists and terrorist weapons from entering the United States, while facilitating the flow of legitimate trade and travel.

**U.S. Immigration and Customs Enforcement (ICE),** the largest investigative arm of the Department of Homeland Security, is responsible for identifying and shutting down vulnerabilities in the nation's border, economic, transportation and infrastructure security.

**U.S. Citizenship and Immigration Services** is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities.

The **U.S. Coast Guard** protects the public, the environment, and U.S. economic interests—in the nation's ports and waterways, along the coast, on international waters, or in any maritime region as required to support national security

The **U.S. Secret Service** protects the President and other high-level officials and investigates counterfeiting and other financial crimes.  This includes financial institution

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 10

fraud, identity theft, computer fraud, and computer-based attacks on our nation's
financial, banking, and telecommunications infrastructure.

The **US-VISIT Program** enhances the security of our citizens and visitors, facilitates
legitimate travel and trade, ensures the integrity of our immigration system, and protects
the privacy of our visitors.  The US-VISIT Program is part of a continuum of security
measures that begins overseas and continues through a visitor's arrival in and departure
from the United States.  It incorporates eligibility determinations made by both the
Departments of Homeland Security and State.

Freedom of Information Act
Operational Review and Improvement Plan Report
Page 11

**APPENDIX B: DHS COMPONENT CHART**



Freedom of Information Act
Operational Review and Improvement Plan Report
Page 12

## APPENDIX C: NAMES, ADDRESSES, AND CONTACT NUMBERS FOR DHS FOIA OFFICERS

Department of Homeland Security
Catherine Papoi
Ph:  571-227-3813; Fax:  571-227-3813
Acting Director, Departmental Disclosure Officer & FOIA
Privacy Office
Department of Homeland Security
Washington, D.C.  20528

Emergency Preparedness & Response
Federal Emergency Management Agency
Jeff Ovall
Ph:  202-646-3051; Fax: 202-646-4536
FOIA Officer
500 C Street, SW
Washington, DC   20472

United States Coast Guard
Donald Taylor
Ph: 202-267-6929; Fax: 202-267-4814
United States Coast Guard
2100 Second Street, SW
Washington, D.C. 20593

United States Secret Service
Latita Huff
Ph:  202-406-5838; Fax: 202-406-5154
Disclosure Officer
950 H Street, N.W., Suite 3000
Washington, D.C. 20223

U.S. Immigration & Customs Enforcement
Gloria Marshall
Ph:  202-616-7498; Fax:  202-616-7612
425 I Street, N.W.
Washington, D.C.  20536-0001

Preparedness Directorate
Sandy Ford Page
Ph: 202-282-9077; Fax: 202-282-9069
Department of Homeland Security
3801 Nebraska Ave, N.W.
Nebraska Avenue Complex, Bldg 19
Washington, DC 20528

Science and Technology Directorate
Cynthia Christian
Ph: 202-254-5710; Fax: 202-254-6178
Department of Homeland Security
1120 Vermont Avenue
Washington, D.C. 20528

Federal Law Enforcement Training Center
Marty Zimmerman-Pate
Ph: 912-267-3103;  Fax:  912-267-3113
Building #94, OBP
Glynco, GA 31524

U.S. Citizenship and Immigration Services
Magda Ortiz
Ph:  202-272-8283; Fax: 202-272-8331
111 Massachusetts Avenue
FOIA Officer
Washington, DC 20532

Transportation Security Administration
Catrina Pavlik
Ph:  571-227-2300; Fax: 571-227-1406
Office of Security, East Bldg, 11th Floor
601 South 12th Street
Arlington, VA 22202-4220

Customs and Border Protection
Shari Suzuki
Ph:  202-572-8720; Fax: 202-572-8727
FOIA Appeals, Policy & Litigation Branch,
1300 Pennsylvania Avenue, NW (Mint Annex)
Washington, D.C.  20229

Office of the Inspector General
Richard Reback
Ph: 202-254-4100; Fax: 202-254-4285
Department of Homeland Security
Washington, D.C.  20528

Office of General Counsel
Erica Perel
Ph: 571-227-3813; Fax: 571-227-4171
Department of Homeland Security
Washington, D.C.  20528

US-VISIT
Barbara Harrison
Ph: 202-298-5200; Fax: 202-298-5201
Department of Homeland Security
Washington, D.C. 20528

# Exhibit B

**Plaintiff's Opposition to Defendant's Motion to Amend the Court's April 27, 2007
Scheduling Order and for a Stay of Proceedings**

*Electronic Frontier Foundation v. Department of Homeland Security*,
**Civil Action No. 06-1988 (ESH)**



# Department of Homeland Security

## Freedom of Information Act Program Revised Operational Improvement Plan

## 2006

In July 2006, the Department of Homeland Security (DHS) produced a Freedom of Information Act (FOIA) report regarding the status of our FOIA program.

That report detailed a wholly unacceptable backlog of FOIA requests that were not being answered by DHS components in a timely manner.  This revised report is the first installment in a systematic assessment of the root causes of this backlog.  It identifies the components with the largest problems, and presents preliminary plans for backlog reduction and elimination.  This latest report follows a mandate from the Secretary to improve performance and chart a course to eliminate the backlog.

The plans presented in this report are still insufficiently aggressive.  This report meets a government-wide reporting requirement, but it will also form the basis of a determined program of investments and management accountability within DHS to do better.  The public deserves no less.

Michael P. Jackson

Deputy Secretary

Freedom of Information Act
Revised Operational Improvement Plan
Page 1

## A.  OVERVIEW OF CURRENT DHS FREEDOM OF INFORMATION ACT PROGRAM

DHS is responsible for leading the unified national effort to secure America by preventing and deterring terrorist attacks and protecting against, and responding to, threats and hazards to the Nation. DHS ensures safe and secure borders, welcomes lawful immigrants and visitors, and promotes the free flow of people and commerce across the borders of the United States. To accomplish its mission, DHS is organized into directorates and components, which are described more fully in Appendix A. Utilizing the organizational structure of the Department, the DHS Freedom of Information Act (FOIA) and Privacy Act (PA)[1] operations are centralized for purposes of policy and programmatic oversight and decentralized for purposes of operational implementation.

Under a Departmental Management Order, the Chief Privacy Officer (CPO) for DHS serves as the Chief Freedom of Information Act Officer (hereinafter Chief FOIA Officer) for the Department and has agency-wide policy responsibility for efficient and appropriate FOIA compliance. Subsequent to the July 2006 report, Hugo Teufel III, was appointed as the Chief Privacy and FOIA Officer.  Mr. Teufel adopted an aggressive stance to diagnose and assist in resolving numerous department-wide managerial and operational program challenges.

To elevate the importance of FOIA at the Department level, Mr. Teufel established a new direct report within the Privacy Office, the position of Deputy Chief Freedom of Information Act Officer.  This position will assure vigorous disclosure program oversight and absolute statutory compliance within all of the DHS offices and components. The Deputy Chief FOIA Officer also performs the supervisory functions carried out by the former Director of Departmental Disclosure, who led the headquarters FOIA operation and team. Mr. Teufel has also added two full-time equivalent (FTE) employee FOIA subject matter experts to the office. The first position administers the headquarters request processing, multi-component request coordination, and component backlog recovery plan development. The second position is dedicated to disclosure policy development, technology improvements, education and training.

Within the components, FOIA officers are responsible for compliance with DHS FOIA policy guidance and operationally determining whether to establish a centralized or decentralized FOIA program at the component or office level. The DHS organizational chart is provided in Appendix B. The names and contact information of DHS FOIA officers are provided in Appendix C.

As a relatively new department of significant size and scope, DHS's programs and policies have been, and continue to be, the subject of numerous FOIA requests because of high public interest in its operations. In Fiscal Year (FY) 2003, incoming FOIA requests totaled 161,117.  In FY2004 requests rose to 168,882; and in FY2005, incoming requests numbered 163,016. Preliminary estimates indicate that incoming FY2006 requests outnumbered those received in FY2005. Despite the challenges discovered during the

---

[1] Further references to FOIA should be interpreted as encompassing all disclosure requests, including PA requests.

Freedom of Information Act
Revised Operational Improvement Plan
Page 2

operational review, DHS FOIA staff completed a substantial workload of 126,126 FOIA
requests and 885 appeals during FY2005. The vast majority of these were answered
through the release of part or all of the records requested.

## B.  OPERATIONAL REVIEW

Based upon the components' March 2006 reviews of their FOIA operations, DHS
accurately focused on the most significant, pervasive department-wide operational
challenges. As stated in the July 2006 report, the components and offices were directed to
thoroughly re-examine operations and draft revised comprehensive improvement plans
specifically addressing existing backlogs, education and training, and technology. In
order to formulate a comprehensive snapshot of overall disclosure operations, DHS also
surveyed the components and offices on specific standard issues relating to FOIA
operations, such as staffing levels, electronic processing capabilities, training
opportunities and requirements, impediments other than staffing that contribute to
backlogs, and the type of information requested most frequently.

### 1.  Backlogs

The revised submissions indicate that six[2] (see Table 1) of the 19 DHS components with
direct FOIA response and denial authority maintain a case backlog of over one hundred[3]
FOIA requests not answered within the statutory 20-day response window. Successfully
preventing or managing a backlog is largely dependent on the leadership's support,
effective disclosure program management, and sufficient resources. The DHS FOIA
programs[4] possessing these commonalities are able to minimize or entirely prevent case
backlogs.

Table 1.        The Six DHS Components with the Largest Backlogs

| Component | Existing Backlog as of 9/15/2006 | Requests Received 2004 | Requests Received 2005 |
|-----------|----------------------------------|------------------------|------------------------|
| USCIS | 88,361 | 149,868 | 138,678 |
| ICE | 7,346 | 2,088 | 4,147 |
| USCG | 906 | 7,579 | 7,020 |
| USSS | 730 | 779 | 715 |
| CBP | 524 | 4,697 | 7,784 |
| FEMA | 236 | 361 | 455 |

---

[2] The six components are U.S. Customs and Border Protection, U.S. Citizenship and Immigration Services,
U.S. Immigration and Customs Enforcement, Federal Emergency Management Agency, U.S. Coast Guard
and U.S. Secret Service.

[3] The remaining components maintain a small unavoidable revolving backlog of fewer than 100, due to the
constant influx of requests. The majority of cases in these components are closed within 30 days of receipt.

[4] Transportation Security Administration, DHS Headquarters, US-VISIT and FLETC do not have case
backlogs.

Freedom of Information Act
Revised Operational Improvement Plan
Page 3

Lack of resources is the prevailing rationale presented for existing backlogs. The resource shortage refers to not only funding for staffing, but also to the difficulty of locating and retaining trained Federal and contract FOIA professionals because of the high demand for qualified FOIA processors government-wide. In addition to resource constraints, many components also indicate that the slow response to FOIA document search requests within the component's various program offices is a significant contributor to delayed response times. Complex cases that require consulting with other components and agencies also prolong processing. Several components note that FOIA-related efforts are often viewed by the program offices as an administrative burden. Insufficient FOIA program support from senior leadership allows for the perpetuation of the "administrative-burden" paradigm, as opposed to promoting FOIA as a priority program. In components that process at the local and field level where FOIA processing is a collateral duty, the time available to process requests is limited, therefore resulting in slower processing rates and a resulting backlog.

### a. United States Citizenship and Immigration Services (USCIS)

USCIS maintains the most troublesome component FOIA backlog. At the end of FY2006, USCIS has a daunting backlog of more than 88,361 requests. It is important to acknowledge that USCIS receives the vast majority of all FOIA requests sent to the Department[5]. Across the entire Federal government, USCIS receives the fourth-highest number of requests annually. Additionally, USCIS stood up within DHS in 2003, bringing with it an existing 25,515 request backlog from the former Immigration and Naturalization Service. With over 100,000 incoming requests annually, USCIS is the source of nearly all of the growth[6] in the FOIA backlog since the Department came to fruition (see Table 2).

The majority of USCIS's FOIA requests come from individuals and their representatives seeking information contained within USCIS's Alien Files (A-files). The information garnered from such requests, we presume, are used to apply for immigration benefits or to represent clients in proceedings pending before an immigration judge. As such, the use of the FOIA process, as a means of discovery in connection with immigration enforcement and court proceedings, and as an information source for genealogy studies are significant contributors to the growing backlog problem. USCIS is positively addressing these two unique challenges by taking requests for genealogy information out of the FOIA process and including it in a newly established administrative information process while establishing a third FOIA processing track for litigation-related information requests. Currently, only "simple" and "complex" tracks are used. The separate litigation-related third track will drastically improve customer service, especially for groups such as the American Immigration Lawyers Association (AILA) that rely on USCIS to provide documents necessary for immigration proceedings.

Another processing hurdle USCIS faces is the sharing of the existing 55 million hardcopy A-files with U.S. Immigration and Customs Enforcement (ICE). Because the A-files

---

[5] CIS accounted for 138,678 of the total 163,016 requests DHS received in FY 2005.

[6] The DHS FOIA backlog increased by 81 percent between FY 2004 and FY 2005.

Freedom of Information Act
Revised Operational Improvement Plan
Page 4

contain both benefit and enforcement documents, an individual's file is either with
USCIS or ICE at any given time. When either ICE or USCIS receives a FOIA request for
the contents of a file, that component must locate the file and determine which program
should have request processing responsibility. This convoluted process of locating,
referring, and processing A-file documents accounts for the high backlog numbers at both
USCIS and at ICE. ICE and USCIS have convened a working group to establish a
streamlined approach to processing both ICE and USCIS documents that are located in
the A-files. ICE recently developed a guide delineating what sensitive information is
protected in ICE documents, allowing USCIS to process any ICE records in the A-file.
This process eliminates referring records to ICE for review and determination of
releasability, which results in unnecessary processing delay. Both components are also
assessing digitization of A-files, which will allow both components to electronically
access any file. This alternative negates the issue of file custody, thereby eliminating the
time spent locating and transferring a file.

**Table 2.        USCIS ANNUAL REPORT FIGURES[7]**

| Fiscal Year | Requests Received | Requests Processed | Available Personnel | Backlog Carried Over from Previous Year |
|---|---|---|---|---|
| FY1999 | 168,944 | 158,913 | 176 | 12,615 |
| FY2000 | 166,283 | 163,881 | 177 | 22,646 |
| FY2001 | 126,658 | 123,334 | 211 | 25,048 |
| FY2002 | 130,511 | 133,368 | 256 | 28,372 |
| FY2003 | 144,559 | 144,748 | 246 | 25,515 |
| FY2004 | 149,868 | 133,997 | 253 | 25,326 |
| FY2005 | 138,678 | 104,934 | 265 | 41,197 |
| FY2006 | 109,294 | 87,967 | 206 | 74,941 |

From the standpoint of numbers, the Department's greatest concern is the USCIS
backlog. The DHS USCIS Ombudsman shares this deep concern and independently
conducted an investigation of USCIS FOIA operations in 2006. His office issued a formal
recommendation to the USCIS Director which is provided in Appendix D. The 17
recommendations address updating the USCIS FOIA processing technology.
Additionally, the recommendations institute oversight mechanisms to adequately monitor
the backlog, provide managerial accountability, implement adequate staff training, review
resource allocation, assess decision to centralize processing, enhance website usefulness,
amend policy guidance, and process evaluations.

USCIS evaluated all of the recommendations and responded in a memorandum provided
in Appendix E. USCIS indicates they agree with all but two of the recommendations. In

---

[7] FY1999 through FY2002 represent the annual FOIA figures for Immigration and Naturalization Service,
part of which became USCIS in 2003 when DHS stood up.

Freedom of Information Act
Revised Operational Improvement Plan
Page 5

addition, in early October 2006, DHS Chief FOIA Officer and the CIS Ombudsman, along with senior staff, traveled to the National Records Center (NRC) in Missouri, where all USCIS A-file FOIA requests are processed. The tour of the NRC and the subsequent meeting between USCIS FOIA officials and the DHS leadership provided a greater understanding of the fundamental managerial and operational changes that need to occur in order to significantly reduce the nearly 90,000 request backlog. The DHS Chief FOIA Officer recently obtained from USCIS resource estimates regarding eliminating the backlog. USCIS currently employees 206 FOIA FTEs and estimates required hiring of at least 211 additional processors to eliminate the USCIS backlog by December 31, 2007.

### b. United States Immigration and Customs Enforcement (ICE)

ICE carries the second largest FOIA backlog at DHS with approximately 10,000 pending requests. As detailed previously, the ICE processing problems were inextricably tied to the USCIS processing difficulties because they share the existing 55 million hardcopy A-files. The inefficient processing of these records contributed to the high backlog numbers at both USCIS and at ICE. Some of the current ICE efforts to eliminate this problem include participation in the ICE/USCIS A-file working group, recently publishing a guide delineating what sensitive information is protected in ICE documents that allows USCIS to process any ICE records in the A-file, and moving forward with the A-file digitization effort. Additionally, ICE is creating a centralized headquarters FOIA office responsible for receiving, tracking and processing all ICE FOIA/PA requests. A newly designed processing approach implements the use of two distinct tracks. One track will have personnel assigned to reducing the backlog of any requests received prior to September 30, 2006, using the first in first out (FIFO) process. The second track will be dedicated to responding to newly received requests within the statutory timeframe. Headquarters will refer any requests related to sensitive investigative matters directly to the ICE Office of Investigations for processing. Efforts underway to prevent future backlogs include implementation of a FOIA case tracking and case management system, web site enhancements permitting the electronic submission of FOIA requests and status notifications, and the addition of approximately 15 new personnel to meet the demands of the ICE FOIA program.

### c. United States Coast Guard (USCG)

USCG faces the challenges inherent to a highly decentralized FOIA processing program. All USCG field offices process FOIA requests and some field offices are staffed by a single collateral duty individual on a rotational and temporary basis. Assigning FOIA responsibilities as a collateral duty is problematic for some field offices because the FOIA workload competes with operational workloads. Some of the current standard operating procedures hinder backlog elimination, such as precluding closure of open investigation-related requests. In addition, USCG and the majority of other DHS components spend large amounts of time processing procurement releases that must comply with Executive Order 12600, *Predisclosure Notification Procedures for Confidential Commercial Information*. The requisite submitter's notice and related negotiations between the component and the submitter can take weeks or months. In the future, USCG anticipates requiring vendors to produce releasable versions of their

Freedom of Information Act
Revised Operational Improvement Plan
Page 6

contract upon execution. USCG will proactively post those contracts in their electronic reading room.

### d. United States Secret Service (USSS)

USSS processes a significant number of classified or sensitive and complex documents. The close coordination among the FOIA staff, the subject matter expert, and the DHS Security Office ensures that any declassification and subsequent release of information complies with the standards of Executive Order 12958, DHS directives and guidelines, and the DHS FOIA regulations. The requisite caution is time-consuming and often a lengthy process due to competing workloads and priorities. Determining classification and declassification responsibilities is a DHS-specific challenge when processing documents that retain classification from a legacy organization pre-dating the creation of DHS. Another DHS-specific issue is the limited availability of qualified staff knowledgeable of the strict processing standards for critical infrastructure and sensitive law enforcement information. In order to accommodate the unique nature of these requests, USSS is considering a separate expedited process for qualifying requests and potentially other processing flows that may streamline its FOIA operations. The DHS components with minimal backlogs are also evaluating implementation of additional processing tracks to accommodate requests unique to each component's mission.

### e. United States Customs and Border Protection (CBP)

CBP is currently developing a plan to centralize the tracking and processing of headquarters requests. Once CBP establishes processing accountability and an operational framework, its FOIA program will be significantly more efficient. Presently, there is a Memorandum of Understanding (MOU) between USCIS and CBP for USCIS to process all information requests pertaining to the Border Patrol. As USCIS must urgently address its backlog, CBP is evaluating terminating the MOU to allow USCIS to focus on and rectify its processing difficulties. CBP is also concerned that the small Border Patrol backlog that USCIS has amassed in the past few months may continue to grow, unnecessarily exposing CBP to potential constructive denial-litigation.

### f. The Federal Emergency Management Agency (FEMA)

In August 2005, FEMA confronted the task of responding to the sudden influx of 266 FOIA requests due to Hurricane Katrina. With only one FTE FOIA processor, FEMA struggled to meet its statutory responsibilities. Considering the unique situation, FEMA handled the processing challenges well. Unpredictable fluctuations in FOIA requests from events such as Hurricane Katrina can result in temporary backlog issues for some DHS components. The components must meet the statutory mandate to process FOIA requests, although the number of personnel available to assist in the task may be inadequate. All components must develop a contingency plan for handling disclosure during an unexpected or urgent situation, in order to meet statutory obligations and prevent a case backlog. At the Departmental level, options that allow for staffing flexibility, such as immediate detail of employees to a component in need, must exist. Consequently, FEMA established a disclosure action plan to implement in case of another national disaster.

Freedom of Information Act
Revised Operational Improvement Plan
Page 7

All components report weekly on significant FOIA requests they receive. The DHS compiles the information and shares the list with all DHS components and other interested DHS parties. This reporting requirement necessitates the components reviewing all incoming requests on a weekly basis, therefore preventing procrastination, accumulation of unopened requests, and additional backlog. Recently, the DHS FOIA Officer instituted a monthly statistical data submission requirement, which includes a breakdown of open cases listing the age of the request.

## 2.  Education and Training

As indicated in the July 2006 report, DHS can make improvements both with requester-oriented education and with employee training. An educated requester is able to properly direct the initial perfected request, which eliminates unnecessary referrals and cuts down on response times. Specialists in many components are hesitant to contact requesters that submit broadly drafted requests. FOIA specialists should be encouraged to do so. A request with an overly broad scope can paralyze a small program office while trying to collect responsive records. Requesters are often willing to amend or narrow the scope of their request when told that specificity will result in a faster, less expensive search. Many component reviews indicate limited usage of available resources, such as web sites, for public education. Use of such resources would assist the Department in achieving its communication goals and garnering public support through greater understanding of DHS programs. A Departmental FOIA reference guide is required under 5 U.S.C. §552(g). Re-drafting the guide published in the electronic reading room will assist prospective FOIA requesters who may be unfamiliar with the Department or the FOIA process.

In addition, DHS should also make requesters aware of other useful FOIA resources, such as the comprehensive DOJ FOIA Guide. To further the Department's efforts to educate and learn from the requester community, the Chief FOIA Officer meets regularly with representatives from the privacy and disclosure communities and encourages feedback from requesters.

Department-wide employee "FOIA 101" training information on the statutory responsibilities of a Federal employee should be mandatory. When entering service within the Department, employees must be educated about the importance of FOIA and informed of their mandatory participation in the DHS FOIA program. All components indicate that retrieving documents from the various offices and obtaining satisfactory statements from the program officials is a time-consuming, burdensome activity.

Additionally, specialized training is essential for DHS FOIA processing professionals. Education and training for the Department's FOIA professionals ensures a consistent interpretation of common aspects of the FOIA administrative process, such as determinations on fee waivers and requests for expedition. Standardization of processing operations guarantees consistent interpretation of FOIA, therefore benefiting the requester community through a greater uniformity of treatment. Some components offer training to their processing professionals.  However others rely on training offered by the Department of Justice (DOJ) or by other industry organizations. All FOIA professionals should receive training annually to maintain currency with processing guidance, pending FOIA-related legislation and recent case law.

Freedom of Information Act
Revised Operational Improvement Plan
Page 8

Finally, the DHS Chief FOIA Officer or his designee should implement processing policy to ensure consistent interpretation of key aspects of FOIA and, in particular, DHS-specific issues, such as classified record processing, multi-component referrals, and legacy agency administrative challenges. The processing guidance should cover all areas that currently receive varying treatment such as fee waivers and expedition determinations, encouraging consistent Departmental treatment of FOIA issues and decrease the potential problems faced during litigation of these matters. The Chief FOIA Officer must further clarify the Department's position on the implementation of FOIA by revising and finalizing the interim DHS FOIA regulations.

The Department must assure that all levels of DHS FOIA education and training stringently emphasize the fundamental FOIA underpinning: customer service. The FOIA requesters are the Department's customers and must be treated with courtesy and respect.

### 3. Technology

The use of technology for processing FOIA requests varies greatly throughout the Department, with nearly every component using a different FOIA electronic processing system. Most of the technology consists of word processing programs for correspondence, a database program for tracking requests, off-the-shelf redaction programs, or manipulation of administrative program features to obtain the same processing and redaction results. Several components have advanced FOIA processing systems, while others are using outdated programs that actually slow processing down. USCIS uses a processing program that was designed in 1999 and is not web-based. Considering the high volume of FOIA requests received, USCIS should be developing and utilizing a first class updated processing system.

The current disparity of electronic processing systems impedes case information sharing and therefore increases processing times. Most components indicate support for implementing a department-wide, automated, web-based system for processing requests. The system of choice would electronically scan requests and responsive documents and allow for electronic redaction. The program must also create a database of all FOIA/PA requests and releases and produce standardized communications, letters, and reports that would require minimal individualized adjustment. The essential feature of the program would be the ability to provide a requester a real-time case status update. Web-based access would increase processing accuracy by allowing file scanning at the local or field level and processing by experienced full-time FOIA processors at a central location. Such a system would reduce the workload at the local and field level to conducting a search for responsive records and scanning and providing any records found. This would also avoid the record custodian having to release custody of the files. Without adequate technology, the processing of FOIA requests and the excising of sensitive information remains a labor intensive and time consuming process. The Chief FOIA Officer is working with the Department's Executive Secretary and Chief Information Officer on a system that could be employed Department-wide.

Ten DHS FOIA programs have their own FOIA web sites. Many of the components' websites also provide additional component-specific information about FOIA and their FOIA processes. Each component should use the electronic reading room on its web site for affirmative disclosure, as required by the Act. This would include documents that

Freedom of Information Act
Revised Operational Improvement Plan
Page 9

have been the subject of multiple FOIA requests or are expected to receive multiple
FOIA requests, statements of department policy, or administrative materials that affect
the public. In addition, DHS should encourage proactive disclosure as a means to
disseminate records to the public without submitting a FOIA request. Some web sites
have provisions for receiving FOIA payments electronically and others have provisions
for receiving FOIA requests electronically. One component, Customs and Border
Protection (CBP), also reported having a web page on its intranet web site (not accessible
by non-CBP employees) that includes a help box for employees to obtain FOIA advice.

## C.  IMPROVEMENT PLAN

This revised collective improvement plan focuses on eliminating backlogs, education and
training, and technological improvements for better customer service. The plan addresses
the components of greatest concern, but every DHS component is expected to make
improvements. Select components have requested funding for some of the large-scale and
more costly improvements and for some components significant improvement may not be
possible without additional resources. Nevertheless, all components are committed to
Department-wide improvement.


### 1.  Backlog

**GOAL: backlog eliminated by <u>December 31, 2007</u>.**

**<u>IMPROVEMENT STEPS</u>:**

- Of the six components with high backlogs, CBP, FEMA, USCIS and ICE
  currently have authority to hire additional FOIA personnel. These components
  initiated hiring actions prior to <u>December 31, 2006</u>.

- CBP, FEMA, USCIS and ICE will complete the hiring of all additional FOIA
  personnel by <u>December 31, 2007</u>.

- The DHS Chief FOIA Officer dispatched a team of FOIA experts to the NRC
  for a week to comprehensively assess USCIS A-file FOIA processing, identify
  any deficiencies, determine the best way to institute critical operational
  changes, and the team drafted a suggested performance modification plan for
  the DHS Chief FOIA Officer prior to <u>December 31, 2006</u>.

- The DHS Chief FOIA Officer will review the performance modification plan
  and seek appropriate actions by <u>June 30, 2007</u>.

- The DHS Chief FOIA Officer requested an evaluation of the precision and
  veracity of the USCIS data analysis and cost estimate, which targets
  eliminating the backlog, prior to <u>December 31, 2006</u>.

- USCIS initiated implementation of the Ombudsman's operational
  recommendations prior to <u>December 31, 2006</u>.

- USCIS will finalize the Ombudsman and Chief FOIA Officer operational
  recommendations by <u>December 31, 2007</u>.

Freedom of Information Act
Revised Operational Improvement Plan
Page 10

- USCIS will finalize and institute the immigration litigation-related third processing track by <u>June 30, 2007</u>.

- The DHS Chief FOIA Officer, USCIS and ICE met with AILA to discuss A-file processing, including customer service enhancements, prior to <u>December 31, 2006</u>.

- USCIS will finalize and establish the alternate administrative process to address genealogy related requests by <u>June 30, 2007</u>.

- USCIS will initiate processing ICE records found in the A-files in accordance with ICE guidance by <u>June 30, 2007</u>.

- USCIS and ICE will establish a target date to finalize the A-file digitization plan by <u>December 31, 2007</u>.

- ICE initiated creation of centralized headquarters FOIA Office by <u>December 31, 2006</u>.

- ICE will finalize establishment of centralized headquarters FOIA Office by <u>June 30, 2007</u>.

- ICE will initiate new two-track processing approach by <u>December 31, 2007</u>.

- ICE will finalize and establish the two-track processing approach <u>June 30, 2007</u>.

- USCG will seek allocation of 16 billets to USCG headquarters by <u>June 30, 2007</u>.

- USCG faces the challenge of a highly decentralized FOIA program; therefore, it is currently assessing the feasibility of centralizing FOIA operations. USCG will complete assessment by <u>December 31, 2007</u>.

- USCG is assessing revising the standard operating procedures for handling procurement-related and open investigation requests. USCG will complete assessment by <u>June 30, 2007</u>.

- USCG will implement new standard operating procedures as deemed appropriate by <u>December 31, 2007</u>.

- USSS will develop at least one separate expedited track for qualifying requests to streamline its FOIA operations by <u>June 30, 2007</u>.

- CBP will finalize the centralization plan for its headquarters request tracking and processing by <u>June 30, 2007</u>.

- CBP will finish the centralization of its headquarters request tracking and processing by <u>December 31, 2007</u>.

- CBP will make a determination on the USCIS MOU termination by <u>June 30, 2007</u>.

- All DHS components and offices will evaluate potentially beneficial operational changes such as centralized processing, implementation of

Freedom of Information Act
Revised Operational Improvement Plan
Page 11

additional processing tracks to accommodate requests unique to each component's mission, and preparation of procurement related documents, by <u>June 30, 2007</u>.

- All DHS components and offices will finalize and implement operational improvements by <u>December 31, 2007</u>.

- The DHS Chief FOIA Officer will assess the feasibility of assembling a "rapid-response" FOIA specialist team of contractors and/or Federal employees for deployment on an as-needed basis to a component facing a disclosure crisis. A feasibility review will be completed by <u>June 30, 2007</u>.

- The DHS Chief FOIA Officer will develop a rapid-response plan for addressing all types of disclosure crises by <u>December 31, 2007</u>.

- All DHS components currently submit weekly and monthly data to the DHS Chief FOIA Officer.

## <u>MEASUREMENTS OF SUCCESS</u>:

- Achieving optimal staffing levels in all components, as determined by a thorough manpower review.

- Implementing the recommendations from the DHS Chief FOIA Officer and the CIS Ombudsman at USCIS.

- Implementing the operational immigration litigation-related third processing track.

- Implementing an established alternate administrative process for genealogy documents.

- USCIS processing ICE A-file records without referral.

- Establishing the A-file digitization target date.

- Implementing the components' operations and procedures assessments and resulting modifications.

- Establishing centralized headquarters ICE FOIA Office.

- Implementing the two-track processing approach at ICE.

- Establishing the disclosure crisis plan.

- All components fulfill weekly and monthly reporting requirements.

- There is a decrease in open cases reported to DHS FOIA each month.

Freedom of Information Act
Revised Operational Improvement Plan
Page 12

### 2. Education and Training

**GOAL: Improve DHS employee FOIA training and customer service by <u>December 31, 2007</u>.**

<u>IMPROVEMENT STEPS</u>:

- Provide a renewed emphasis throughout the Department on the importance of FOIA, conveyed from the top down, and establish the message that all employees must be active participants in the DHS FOIA program. All senior component leaders will be encouraged to issue memoranda to employees indicating their expectation of compliance with FOIA obligations. Memoranda will be issued by <u>June 30, 2007</u>.

- All components and offices will make available "FOIA 101" information for all employees detailing FOIA obligations and stressing customer service by <u>June 30, 2007</u>.

- All FOIA professionals who expend more than 50 percent of their work time to FOIA must take annual FOIA training offered by the Department of Justice (DOJ), Office of Information Privacy (OIP), or an equivalent by <u>December 31, 2007</u>.

- The DHS FOIA Officer instituted semi-annual FOIA officer meetings prior to <u>December 31, 2006</u>.

- The DHS FOIA Requester Service Center and component public liaisons addressed all pending customer concerns or disputes prior to <u>December 31, 2006</u>.

- The DHS FOIA Requester Service Center and component public liaisons must acknowledge all incoming customer concerns or disputes within five business days of receipt.

- To assure that all responses are consistent and contain statutorily required information, all components and offices will draft and implement the use of letter templates containing standardized language by <u>June 30, 2007</u>.

- DHS will finalize DHS FOIA regulations by <u>December 31, 2007</u>.

- All non-exempt DHS components and offices must fully comply with the final DHS regulations by <u>December 31, 2007</u>.

- DHS collected, reviewed, and assessed all existing disclosure policy within the components prior to <u>December 31, 2006</u>.

- DHS will resolve any conflicting guidance and draft Departmental guidance on necessary issues by <u>December 31, 2007</u>.

<u>MEASUREMENTS OF SUCCESS</u>:

- All employees receive communication from leadership indicating expectation of compliance with FOIA obligations.

Freedom of Information Act
Revised Operational Improvement Plan
Page 13

- All DHS employees can access "FOIA 101" information.

- All FOIA professionals are successfully completing annual FOIA training.

- All FOIA officers are attending the semi-annual meeting hosted by the DHS Chief FOIA Officer.

- Resolving satisfactorily every concern received by the DHS FOIA Requester Service Center and component public liaisons.

- All component processors are using standard templates.

- Finalize DHS FOIA regulations.

- All applicable components and offices are complying with DHS FOIA regulations.

- The DHS disclosure policy is not in conflict with component or office policy.

- The DHS disclosure policy is issued on common FOIA processing issues.

**GOAL: Increase public knowledge and awareness of DHS FOIA by December 31, 2007.**

**IMPROVEMENT STEPS:**

- Continue to educate the requester community and increase public awareness of FOIA generally through Privacy Office sponsored workshops.

- Revise the online DHS FOIA Reference Guide by June 30, 2007.

- Provide a link to the DOJ FOIA Guide from the DHS FOIA web page by June 30, 2007.

- The DHS Chief FOIA Officer will continue to meet and encourage communications with the requester community.

**MEASUREMENTS OF SUCCESS:**

- Increasing the public attendance at workshops significantly.

- Publishing the revised DHS FOIA Reference Guide in the DHS electronic reading room.

- Provide a link to the DOJ FOIA Guide on the DHS FOIA web page.

**3. Technology Improvements to Enhance FOIA Processing and Information Delivery**

**GOAL: Identify, implement and encourage Department-wide use of FOIA tracking and processing technology by December 31, 2007.**

**IMPROVEMENT STEPS:**

- DHS identified a web-based case management program with electronic tracking capabilities prior to December 31, 2006.

Freedom of Information Act
Revised Operational Improvement Plan
Page 14

- DHS identified a redaction program prior to <u>December 31, 2006</u>.

- OCIO will complete the software evaluation and requisite DHS compliance assessment by <u>June 30, 2007</u>.

- DHS will issue a department-wide software implementation recommendation by <u>December 31, 2007</u>.

<u>MEASUREMENTS OF SUCCESS</u>:

- Provide a single affordable, web-based case management program with electronic tracking.

- Identify an affordable redaction program.

- Initiate implementation of FOIA software in participating components.

**GOAL: Enhance component web sites to improve customer service.**

<u>**IMPROVEMENT STEPS**</u>:

- All DHS components and offices with web sites assessed their existing FOIA website and initiated improvements prior to <u>December 31, 2006</u>.

- All FOIA offices will have a web site or a link to the DHS FOIA web site from their component's home page by <u>June 30, 2007</u>.

- Increase proactive disclosure of documents on component and office web sites to allow public access to records without submitting a FOIA request by <u>June 30, 2007</u>.

- Confirm compliance with 5 U.S.C.§552 (a)(2) requirement for affirmative disclosure of statutorily specified documents, such as frequently requested records, policy statements, and final agency opinions, by <u>June 30, 2007</u>.

<u>**MEASUREMENTS OF SUCCESS**</u>:

- All components will have an established presence on the World Wide Web.

- All component and office web sites are up-to-date, proactive disclosures are posted, and the 5 U.S.C. §552 (a)(2) requirements are met.

## D.  SUMMARY OF IMPROVEMENT AREAS

### 1.  Items Instituted prior to December 31, 2006

- All components submit weekly report to DHS FOIA on any significant incoming requests.

- All components submit monthly case statistical data.

- DHS FOIA Requester Service Center and FOIA public liaisons for every FOIA component program must acknowledge all incoming customer concerns or disputes within five business days of receipt.

- DHS Chief FOIA Officer meets with requester community, as needed.

Freedom of Information Act
Revised Operational Improvement Plan
Page 15

- Applicable components tasked to hire FOIA personnel.

- DHS FOIA designees visited the National Records Center and submitted a draft performance modification plan to the DHS Chief FOIA Officer.

- DHS Chief FOIA Officer requested completion of an assessment of the USCIS data analysis and cost estimate targeting eliminating the 2007 backlog.

- USCIS initiated the institution of the Ombudsman's operational recommendations.

- The DHS Chief FOIA Officer met with AILA to discuss A-file processing.

- The DHS Chief FOIA Officer meets semi-annually with component FOIA officers.

- The public is becoming more knowledgeable and aware of DHS disclosure operations.

- The DHS FOIA Requester Service Center and FOIA public liaisons for every FOIA component program resolve all customer concerns or disputes.

- DHS collected and reviewed all existing component FOIA policies.

- Privacy Office offers workshops.

- DHS identified web-based FOIA case management and redaction software.

- Components with existing web sites reassessed their FOIA website and initiated any necessary improvements to improve customer service.

**2. Items to be Completed by June 30, 2007**

- USCIS will implement the new processing final rules pertaining to genealogy and immigration litigation-related requests and initiate processing ICE records in accordance with ICE guidance.

- USCG will submit for allocation of 16 billets for USCG headquarters.

- All components will initiate evaluations of disclosure operations, to include processing centralization, processing-track modifications and internal processing procedures.

- USCIS is instituting the NRC performance modification plan.

- The DHS Chief FOIA Officer reports any data discrepancies or concerns regarding the USCIS data analysis and cost estimate targeting 2007 backlog elimination and USCIS incorporates modifications into its backlog elimination plan.

- Senior component leaders will issue memos regarding FOIA responsibilities.

- "FOIA 101" information will be available to all DHS employees.

- Components will draft and implement the use of response letter templates.

Freedom of Information Act
Revised Operational Improvement Plan
Page 16

- All components determine appropriate modifications to disclosure operations, including processing centralization, processing-track modifications and internal processing procedures.

- DHS will publish the Revised Online DHS FOIA Reference Guide.

- The DHS FOIA web site will provide a link to the DOJ FOIA Guide.

- All DHS components will have a web site or a link to the DHS FOIA webpage from their component's public web site.

- Each component will proactively disclose documents on its web site.

- Components will be in full compliance with statutorily mandated affirmative disclosure requirements.

**3. Items to be Completed by December 31, 2007**

- DHS will eliminate its request backlog.

- Applicable components complete all FOIA personnel hiring actions.

- Improved DHS employee FOIA training available.

- Improved customer service through the liaisons.

- USCIS and ICE will determine a target date for completing the A-file digitization project.

- Programs will finalize operational changes deemed necessary, including processing centralization, processing-track modifications, and internal processing procedures.

- USCIS will institute the Ombudsman's operational recommendations.

- Working with the Office of the General Counsel, the DHS Chief FOIA Officer will finalize a plan on management of disclosure-crisis.

- DHS FOIA professionals who devote more than 50 percent of their time to FOIA will attend annual FOIA training offered through the U.S. Department of Justice or other similar program.

- DHS will finalize FOIA regulations.

- All applicable DHS components will be in full compliance with the DHS FOIA regulations.

- DHS will resolve any conflicting component FOIA policy.

- DHS completes the FOIA processing software assessment and issues Department-wide implementation recommendation.

- The DHS Chief FOIA Officer will issue a final determination on establishing a quick-response FOIA processing team for deployment on an as-needed basis.

Freedom of Information Act
Revised Operational Improvement Plan
Page 17

APPENDIX A:  COMPOSITION OF THE DEPARTMENT OF HOMELAND
SECURITY

The Office of the Secretary oversees activities with other federal, state, local, and private
entities as part of a collaborative effort to strengthen our borders, provide for intelligence
analysis and infrastructure protection, improve the use of science and technology to
counter weapons of mass destruction, and to create a comprehensive response and
recovery system. The Office of the Secretary includes multiple offices that contribute to
the overall Homeland Security mission. These are:

The Privacy Office works to minimize the impact on the individual's privacy,
particularly the individual's personal information and dignity, while achieving the
mission of the Department of Homeland Security.

The office for Civil Rights and Civil Liberties provides legal and policy advice to
Department leadership on civil rights and civil liberties issues, investigates and
resolves complaints, and provides leadership to Equal Employment Opportunity
Programs.

The Office of Inspector General is responsible for conducting and supervising
audits, investigations, and inspections relating to the programs and operations of
the Department, recommending ways for the Department to carry out its
responsibilities in the most effective, efficient, and economical manner possible.

The Citizenship and Immigration Services Ombudsman provides
recommendations for resolving individual and employer problems with the United
States Citizenship and Immigration Services in order to ensure national security
and the integrity of the legal immigration system, increase efficiencies in
administering citizenship and immigration services, and improve customer
service.

The Office of Legislative and Intergovernmental Affairs serves as primary liaison
to members of Congress and their staffs, the White House and Executive Branch,
and to other federal agencies and governmental entities that have roles in assuring
national security.

The office of the Federal Coordinator for Recovery and Rebuilding of the Gulf
Coast Region was created to help assist the region with long-term planning and
coordinating the federal government's response to rebuild the Gulf Coast region
devastated by Hurricanes Katrina and Rita.

The Office of the General Counsel is responsible for all legal activities within
DHS, to ensure full implementation of DHS' statutory responsibilities and all
policies set forth by the Secretary and all officials of DHS. All DHS sub-unit
and agency legal offices report up to the DHS Office of General Counsel.

Freedom of Information Act
Revised Operational Improvement Plan
Page 18

The Office of Counternarcotics Enforcement provides expert advice to the Secretary and coordinate Departmental efforts to secure borders against flow of illegal drugs and to protect the United States against drug related criminal enterprises.

The Office of Public Affairs is responsible for oversight and management of all external and internal communications for the Department of Homeland Security. The Office of Public Affairs also develops and manages various public education programs, including the Ready campaign to increase citizen preparedness.

Department Components:

The Directorate for Preparedness works with State, local, and private sector partners to identify threats, determine vulnerabilities, and target resources where risk is greatest, thereby safeguarding our borders, seaports, bridges and highways, and critical information systems.

The Science and Technology Directorate is the primary research and development arm of the Department.  It provides federal, state and local officials with the technology and capabilities to protect the homeland.

The Management Directorate is responsible for Department budgets and appropriations, expenditure of funds, accounting and finance, procurement; human resources, information technology systems, facilities and equipment, and the identification and tracking of performance measurements.

The Office of Policy Directorate is the primary policy formulation and coordination component for the Department of Homeland Security.  It provides a centralized, coordinated focus to the development of Department-wide, long-range planning to protect the United States.

The Federal Emergency Management Directorate prepares the Nation for hazards, manages Federal response and recovery efforts following any national incident, and administers the National Flood Insurance Program.

The Office of Intelligence and Analysis is responsible for using information and intelligence from multiple sources to identify and assess current and future threats to the United States.

The Office of Operations Coordination is responsible for monitoring the security of the United States on a daily basis and coordinating activities within the Department and with governors, Homeland Security Advisors, law enforcement partners, and critical infrastructure operators in all 50 states and more than 50 major urban areas nationwide.

Freedom of Information Act
Revised Operational Improvement Plan
Page 19

The <u>Domestic Nuclear Detection Office</u> works to enhance the nuclear detection efforts of federal, state, territorial, tribal, and local governments, and the private sector and to ensure a coordinated response to such threats.

The <u>Transportation Security Administration</u> protects the Nation's transportation systems to ensure freedom of movement for people and commerce.

<u>United States Customs and Border Protection</u> is responsible for protecting our Nation's borders in order to prevent terrorists and terrorist weapons from entering the United States, while facilitating the flow of legitimate trade and travel.

<u>United States Immigration and Customs Enforcement</u>, the largest investigative arm of the Department of Homeland Security, is responsible for identifying and shutting down vulnerabilities in the nation's border, economic, transportation and infrastructure security.

The <u>Federal Law Enforcement Training Center</u> provides career-long training to law enforcement professionals to help them fulfill their responsibilities safely and proficiently.

<u>United States Citizenship and Immigration Services</u> is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities.

The <u>United States Coast Guard</u> protects the public, the environment, and U.S. economic interests in the Nation's ports and waterways, along the coast, on international waters, or in any maritime region as required to support national security.

The <u>United States Secret Service</u> protects the President and other high-level officials and investigates counterfeiting and other financial crimes, including financial institution fraud, identity theft, computer fraud; and computer-based attacks on our nation's financial, banking, and telecommunications infrastructure.

Freedom of Information Act
Revised Operational Improvement Plan
Page 20

**APPENDIX B: DHS ORGANIZATIONAL CHART**



Freedom of Information Act
Revised Operational Improvement Plan
Page 21

## APPENDIX C: NAMES, ADDRESSES, AND CONTACT NUMBERS FOR DHS FOIA OFFICERS

Department of Homeland Security
Catherine Papoi
Ph: 571-227-3813; Fax: 571-227-3813
Director, Disclosure & FOIA
Deputy Chief FOIA Officer
601 South 12th Street, DHS-D3
Arlington, VA 22202

Emergency Preparedness & Response
Federal Emergency Management Agency
Jeff Ovall
Ph: 202-646-3051; Fax: 202-646-4536
FOIA Officer
500 C Street, SW
Washington, D.C. 20472

United States Coast Guard
Donald Taylor
Ph: 202-267-6929; Fax: 202-267-4814
United States Coast Guard
2100 Second Street, SW
Washington, D.C. 20593

United States Secret Service
Latita Huff
Ph: 202-406-5838; Fax: 202-406-5154
Disclosure Officer
245 Murray Drive, Bldg. 410
Washington, D.C. 20223

U.S. Immigration & Customs Enforcement
Katrina Pavlik
Ph: 202-616-7498; Fax: 202-616-7612
425 I Street, N.W.
Washington, D.C. 20536-0001

Preparedness Directorate
Sandy Ford Page
Ph: 202-282-9077; Fax: 202-282-9069
Department of Homeland Security
3801 Nebraska Ave, N.W.
Nebraska Avenue Complex, Bldg 19
Washington, D.C. 20393

Federal Law Enforcement Training Center
Marty Zimmerman-Pate
Ph: 912-267-3103; Fax: 912-267-3113
OBP
Building #94
Glynco, GA 31524

U.S. Citizenship and Immigration Services
Brian Welsh
Ph: 816 350-5570; Fax: 202-272-8331
FOIA Officer
P.O. Box 648010
Lees Summit, MO 64064-8010

Transportation Security Administration
Anastasia Taylor
Ph: 571-227-2300; Fax: 571-227-1406
West Bldg, 11th Floor
601 South 12th Street
Arlington, VA 22202-4220

Customs and Border Protection
Shari Suzuki
Ph: 202-572-8720; Fax: 202-572-8727
FOIA Appeals, Policy & Litigation Branch,
1300 Pennsylvania Avenue, NW (Mint Annex)
Washington, D.C. 20229

Office of the Inspector General
Richard Reback
Ph: 202-254-4100; Fax: 202-254-4285
Department of Homeland Security
Washington, D.C. 20528

Office of the General Counsel
Michael Russell
Ph: 202-447-3526; Fax: 202-447-3111
Department of Homeland Security
Washington, D.C. 20528

Freedom of Information Act
Revised Operational Improvement Plan
Page 22

Science and Technology Directorate
Cynthia Christian
Ph: 202-254-5710; Fax: 202-254-6178
Department of Homeland Security
1120 Vermont Avenue
Washington, D.C. 20528

US-VISIT
Sophia Young
Ph: 202-298-5200; Fax: 202-298-5201
Department of Homeland Security
Washington, D.C.  20528

Office of Operations Coordination
Reginald Hudson
Ph: 202-282-8769; Fax: 202-282-9069
Department of Homeland Security
3801 Nebraska Ave, N.W.
Nebraska Avenue Complex
Washington, D.C. 20393

Office of Intelligence and Analysis
Reginald Hudson
Ph: 220-282-8769; Fax: 202-282-9069
Department of Homeland Security
3801 Nebraska Avenue, N.W.
Nebraska Avenue Complex
Washington, D.C. 20393

Office of Civil Rights and Civil Liberties
James McNeely
Ph: 202-772-9856; Fax: 202-773-9738
Department of Homeland Security
Room 5608-9
Washington, D.C. 20528

Policy Directorate
Patti Miller
Ph: 202-282-9549; Fax: 202-282-8502
Department of Homeland Security
3801 Nebraska Avenue, N.W.
Nebraska Avenue Complex
Washington, D.C. 20393

Management Directorate
Shila Ressler
Ph: 202-447-3099; Fax: 202-447-3713
3801 Nebraska Avenue, N.W.
Nebraska Avenue Complex
Washington, D.C. 20393

Freedom of Information Act
Revised Operational Improvement Plan
Page 23

**APPENDIX D: RECOMMENDATION FROM THE CIS OMBUDSMAN TO THE DIRECTOR, USCIS**

| | |
|---|---|
| To: | Dr. Emilio T. Gonzalez, Director, U.S. Citizenship and Immigration Services |
| Cc: | Michael P. Jackson, Deputy Secretary, Department of Homeland Security |
| From: | Prakash I. Khatri, CIS Ombudsman |
| Date: | July 12, 2006 |
| Re: | Recommendation to USCIS to improve Freedom of Information Act operations while ensuring that information is provided timely by implementing seventeen actions and requirements which will result in a substantially reduced backlog. |

**I.    RECOMMENDATION**

Recommendation to USCIS to improve Freedom of Information Act operations while ensuring that information is provided timely by implementing seventeen actions and requirements which will result in a substantially reduced backlog.

**II.    BACKGROUND**

**A.    *General Information on the Freedom of Information Act (FOIA)***

The Freedom of Information Act (FOIA), 5 U.S.C. § 552, was enacted in 1966 and generally provides that any person has the right, enforceable in court, to request access to federal agency records or information. All agencies of the Executive Branch of the United States Government are required to disclose records upon receiving a written request for them, except for those records (or portions of them) that are protected from public disclosure by one of the nine exemptions or three special law enforcement record exclusions of the FOIA. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975).

The purpose of FOIA is to make federal agencies accountable for information disclosure policies and practices. While the FOIA does not grant an absolute right to examine government documents, it does establish the right to request records and to receive a response to the request. If a record cannot be released, the requester is entitled to be formally advised of the reason for the denial. The requester has a right to appeal the denial and to challenge it in court.

Under the FOIA statute, all federal agencies must respond to a FOIA request within twenty business days, excluding Saturdays, Sundays, and legal holidays. This time period does not begin until the request is actually received by the FOIA office that maintains the records sought. An agency is not required to send out the releasable documents by the last business day; it can send a letter informing of its decision and then send the documents within a reasonable time afterward. Under the FOIA, a component may extend the initial response time for an additional ten business days when: (1) the component needs to collect responsive records from field offices; (2) the request involves a "voluminous" amount of records that must be located, compiled, and reviewed; or (3) the component needs to consult with another agency or other components that have a

Freedom of Information Act
Revised Operational Improvement Plan
Page 24

substantial interest in the responsive information.  When such a time extension is needed, the component may notify the requester in writing and offer the opportunity to modify or limit the request.

In March 2005, Congress introduced the Faster FOIA Act of 2005 that would establish a 16 member commission responsible for finding ways to reduce delays.  S. 589.  The Senate Judiciary Committee has approved the legislation, but still awaits full Senate consideration.  On December 14, 2005, President George W. Bush issued Executive Order 13392 entitled <u>Improving Agency Disclosure of Information</u> in a move prompted by pending legislation.  70 Fed. Reg. 75373.  On December 30, 2005, the Office of Management and Budget (OMB) issued a <u>Memorandum for Heads of Department and Agencies</u> that called for agencies to name a Chief FOIA Officer, to review agency FOIA operations and compile a plan to improve agency FOIA operations. M-06-04.

The Executive Order called on federal agencies to name a Chief FOIA Officer at the Assistant Secretary Level or equivalent by January 13, 2006.  This individual's name should be posted on the agency's website.  The Chief FOIA Officer should conduct a review of agency FOIA operations within certain timelines, and draft a plan with "concrete milestones for FY06 and FY07."  The findings and the improvement plan should be sent to the Department of Justice (DOJ) and OMB and posted on agency websites by June 14, 2006.  These improvement plans should not only "seek additional funding for FOIA operations," but actually address FOIA operations by making employees responsible for aiding FOIA Offices in processing documents and for reassigning existing resources to FOIA operations[8].  These plans should actually improve FOIA operations and supply FOIA employees with the financial and managerial support to process requests in a timely manner.

The Executive Order also called on federal agencies to include information on how well they have met the milestones of the plan in their FOIA reports to DOJ for FY 2006 and FY 2007.  Agencies should establish a FOIA Requester Service Center that "will enable FOIA requesters to seek information concerning the status of their FOIA request and appropriate information about the agency's FOIA response."  Agencies should also designate public liaisons who "will serve as supervisory officials to whom a FOIA requester can raise concerns about the service the FOIA requester has received from the Center, following an initial response from the Center staff."

## B.    USCIS Administration of FOIA and Privacy Act (PA)

The United States Citizenship and Immigration Services (USCIS) implemented a FOIA centralized processing program in 1997 called the FOIA and Privacy Act Information Processing System (FIPS).  FIPS was created as an imaging, workflow, and case tracking system that provides online processing, redaction and release (on paper or CD) of documents for efficient movement of cases to ensure compliances with all mandates and rapid release of documents requested.  FIPS was deployed for 260 users at

---

[8] Pursuant to Executive Order 13392, USCIS submitted its <u>FOIA Operations Review Report</u> through the Director of Departmental Disclosure & FOIA for the Chief Freedom of Information Act Officer on March 17, 2006.

Freedom of Information Act
Revised Operational Improvement Plan
Page 25

48 locations across the country and supports all the required processing in two shifts (20 hours per day) for more than 130,000 requests per year.[9]

The USCIS National Records Center (NRC) opened on November 15, 1999, and processes applicants' direct FOIA requests for alien records as well as requests received by USCIS field offices. Because FIPS can be accessed from any location, the NRC processes the primary FOIA/PA workload, while USCIS FOIA/PA in Burlington, Vermont (Vermont) processes personnel-related and contract related requests, and USCIS Headquarters (HQ) processes sensitive or high-profile records. The NRC indicated in January 2006 that they are processing 4,000 to 6,000 FOIA requests per month. The expectation is that processing times will be reduced due to processing streamlining, total dedication of FOIA/PA staff to processing, and the ability to electronically shift workload and files. However, the USCIS process of FOIA is multi-leveled. Although the FOIA request is submitted to USCIS, the request may involve other agencies, such as DOJ, Immigration and Customs Enforcement (ICE) or Customs and Border Patrol (CBP). USCIS does not have jurisdiction over other agencies, and has limited, if any, access to their databases. Thus, the acquisition of information between agencies causes delay and results in an unmet statutory mandate to process FOIA requests within 20 days.

### C.    DHS Privacy Office Analysis of USCIS FOIA/PA Requests for FY 2005

In April 2006, the Department of Homeland Security's (DHS) Privacy Office released its <u>Freedom of Information Act Annual Report for Fiscal Year (FY) 2005</u>.[10] During FY 2005, 126,126 DHS FOIA and Privacy Act requests were processed as compared to 152,027 requests processed in FY 2004, reflecting a 17% decrease in requests processed. The decrease in DHS processing rates is due to several factors including complex requests, working FOIA searches into operational workload requirements, varying levels of technology used in FOIA processing and experienced staff turnover.[11]

---

[9] IMC Develops Award-winning FOIA Case Management System
http://www.imc.com/content.aspx?content_id=31

[10] Department of Homeland Security FOIA Annual Report for 2005, published April 2006.

[11] Id, p. 11, chart a, annual workload, staffing levels, and estimated processing cost comparisons.

Freedom of Information Act
Revised Operational Improvement Plan
Page 26

| **Annual Workload, Staffing Levels, and Estimated Processing Cost Comparisons** | | | | |
|---|---|---|---|---|
| | **FY 2003** | **FY 2004** | **FY 2005** | **Percentage of change FY2004-FY2005** |
| Requests Received + FY carryover | 189,860 | 197,728 | 208,717 | 5.6% |
| Requests Processed | 160,902 | 152,027 | 126,126 | -17.0% |
| Expedited Requests Processed | 187 | 692 | 1,016 | 46.8% |
| End of Year Pending Requests | 29,007 | 45,701 | 82,591 | 80.7% |
| Staffing Levels (full time) | 334 | 340.1 | 345 | 1.4% |
| Estimated Processing Costs (total) | $21,924,851 | $21,148,318 | $28,824,858 | 36.3% |

The following charts are developed from DHS Component FOIA/PA Statistical Charts to compare USCIS FOIA/PA agency requests to DHS FOIA/PA requests in an entirety:

| **Process and Receipt of FOIA Requests** | | | | | | |
|---|---|---|---|---|---|---|
| **FOIA/PA Components** | **Pending End of 2004** | **Received FY 2005** | **Requests available for processing FY 2005** | **Processed FY 2005** | **Pending End of FY 2005** | **Median Number of Days Pending** |
| DHS  TOTAL | 45,701 | 163,016 | 208,717 | 126,126 | 82,591 | n/a |
| **USCIS** | **41,197** | **138,678** | **179,875** | **104,934** | **74,941** | **73** |

The estimated costs for the decentralized DHS FOIA Program preclude an accurate accounting of search, duplication, administrative, transferal and transmitting costs.[12]

---

[12] Id, p. 12, chart c, Processing Costs.

Freedom of Information Act
Revised Operational Improvement Plan
Page 27

| FOIA Processing Costs | | | | | |
|---|---|---|---|---|---|
| **FOIA Components** | **Processing Costs** | | | | |
| | Processing (including Appeals) | Litigation Related Activities | Total Costs | Estimated Part-time FOIA/PA Support | Estimated Total Costs |
| DHS TOTAL | 17,992,169 | 481,784 | 18,473,953 | 10,350,905 | 28,824,858 |
| **USCIS** | **11,352,633** | **67,755** | **11,420,388** | **0** | **11,420,388** |

 USCIS maximized FOIA/PA resources and increased uniformity of processing by centralizing the entire workload from 46 offices to 3 (NRC; USCISHQ; USCIS FOIA/PA Office, Burlington, Vermont).[13]

| Disposition of Initial Requests | | | | |
|---|---|---|---|---|
| **FOIA/PA Components** | **Full Release** | **Partial Release** | **Denied** | **No Records** |
| DHS TOTAL | 28,631 | 48,564 | 894 | 11,855 |
| **USCIS** | **19,851** | **43,921** | **221** | **9,908** |

| Median Response Times | | | | | | |
|---|---|---|---|---|---|---|
| **FOIA/PA Components** | **Simple Requests** | | **Complex Requests** | | **Expedited Requests** | |
| | Processed | Median Days to Process | Processed | Median Days to Process | Processed | Median Days to Process |
| DHS TOTAL | 95,993 | | 29,117 | | 1,016 | |
| **USCIS** | **85,307** | **45** | **19,532** | **55** | **95** | **15** |

---

[13] Id, p. 17, DHS Component FOIA/PA Statistical Charts, chart b, Disposition of Initial Requests.

Freedom of Information Act
Revised Operational Improvement Plan
Page 28

| **FOIA/PA Staffing Level** | | | |
|---|---|---|---|
| **FOIA/PA Components** | **FY 05 FOIA Staffing Levels** | | |
| | Full-Time Employee (federal & contractor) | Part-time FOIA/PA Admin Support | Total Work Years |
| DHS TOTAL | 345 | 276.6 | 621.6 |
| **USCIS** | **265** | **0** | **265** |

The existing USCIS FOIA program results show that FOIA processing is given low priority without clearly delineated accountability; thus backlogs develop or litigation ensues because of errors in processing. Oversight, insufficient resources, and budget problems have led to deficiencies such as:

- Lack of management support and accountability for the FOIA program;

- Outdated USCIS procedures and regulations implementing the FOIA;

- Lack of frequent and useful training for new and existing FOIA employees; and

- Lack of effective leadership of the national FOIA program addressing oversight, training, and policy, coordination/centralization of complex FOIA requests and billing, and determinations on requests for expedited processing and fee waivers.

Managers do not set production goals for employees. FOIA procedures do not require federal agencies to penalize employees for missing statutory deadlines. There is an absence of serious consequence either for an individual federal employee responding to a FOIA request or the federal agency. While an overhaul of the FOIA program is not required, changes should be made immediately to ensure USCIS compliance under the FOIA and the Executive Order.

## III.    JUSTIFICATION

### A.    *Accountability*

Accountability and effective prioritization are lacking. Accountability throughout USCIS is imperative for compliance with FOIA. There should be increased efforts to reduce the backlog of outstanding FOIA requests. USCIS Office of Record Services (ORS) should be designated as the lead office to oversee and administer FOIA because of its current responsibilities for FOIA policy, records management, and Privacy Act matters. Supervisors should be held responsible for ensuring compliance with the statutory requirements of FOIA. Structurally, new roles and responsibilities should be integrated into the FOIA program, and the role and importance of personnel with FOIA responsibilities should be enhanced.

Freedom of Information Act
Revised Operational Improvement Plan
Page 29

**_i._**    **_Systems Issues (#1 and #2)_**

**1.    Develop a web-enabled USCIS-wide FOIA Tracking System that meets statutory requirements of E-FOIA and provides document management and workflow for simultaneous reviews and multi-track assignment of FOIA requests.**

**_Reason_**: FIPS is not web-enabled.[14]  The E-FOIA amendments provide for increased accountability in the tracking of USCIS FOIA requests and for a process to manage those requests on a first-in, first-out basis.  This accounting should be reported in the Annual FOIA Report to Congress. E-FOIA also requires that the Annual Report and certain categories of records, including those requested frequently, be placed in the Electronic Reading Room.  USCIS has no system that meets these requirements and that generates an accurate report within a reasonable period of time.  FIPS should incorporate a comprehensive FOIA tracking system, and USCIS FOIA staff should be vigilant about tracking and systematically processing all FOIA requests.  There should also be identification elements to correctly verify FOIA requestors conducting personal status checks in compliance with Privacy Act issues.

**2.    Replace all remaining USCIS stand-alone FOIA systems, after either importing existing electronic files into the new USCIS-wide FOIA system or establishing a link from the new system to the old system to make full use of the existing technology and electronic records.  Give FOIA Officers, FOIA Management, and other FOIA personnel, access to the new FOIA system as needed.**

**_Reason_**: FIPS may be the USCIS FOIA/PA system, but it is unclear whether employees use the system to enter and respond to all requests, or if managers can track the status of requests and check employee responses times.  Due to the large volume of FOIA requests that USCIS receives and its backlog of unanswered requests, many program offices have expended funds for developing their own FOIA systems to track requests.[15]  An efficient and effective centralized FOIA system would provide for accurate tracking and reporting of requests.  USCIS recently centralized the primary FOIA workload from 46 offices to 3 (NRC; USCISHQ; Vermont).  As of the date of this recommendation, only 4 field offices (Omaha, NE; El Paso, TX; San Antonio, TX, and Halingen, TX) remain to have their FOIA workload be centralized.

---

[14] USCIS ORS "FIPS Demonstration" to CISO, November 10, 2005.

[15] GAO Exit Conference Review of USCIS Management of A-File Automation Project, January 27, 2006.

Freedom of Information Act
Revised Operational Improvement Plan
Page 30

ii.    *Reports and Pending Backlog (#3, #4, and #5)*

1.    **Provide FOIA Supervisors in each program with a copy of a monthly list of overdue FOIA requests and a bi-weekly list of pending requests, with a copy of both lists sent to the Senior Management of the FOIA/PA program.**

*Reason*: FIPS generates reports that give overdue and outstanding FOIA requests.[16] However, it is unclear how often these reports are generated and submitted. The monthly report will serve as a reminder of requests that are overdue (i.e., an initial response was not sent within the 20-day time period and no formal extension of time or alternative due date was obtained from the requester). The bi-weekly report will serve as a forecast of requests that have not yet reached their due date, but which USCIS needs to answer. Both reports will be passed on to the appropriate Senior Manager for the affected program for action.

2.    **Require FOIA management to review the list of overdue FOIA requests, verify the number of outstanding requests, and commit efficient resources to reduce the backlog. The status of this backlog-reduction effort should be reported to the ORS FOIA Office monthly.**

*Reason*: USCIS has a significant backlog of initial FOIA requests. USCIS indicated developments of a FOIA backlog reduction plan, but has not provided the CISO with any concrete details regarding these developments.[17] FOIA supervisors are aware of outstanding requests and allocate resources as necessary, but it is unclear whether these resources are efficiently and effectively resolving the pervasive problems. HQFOIA/PA and ORS are aware of the status of pending FOIA/PA requests nationwide, but it is unclear whether their backlog-reduction efforts are reported consistently to ORS. Failure to answer requests within the statutory time limits exposes USCIS to litigation and unfavorable publicity.

3.    **Require each FOIA supervisor to review the bi-weekly list of pending FOIA requests and address other FOIA issues with the same high priority given to controlled correspondence and congressional inquiries.**

*Reason*: FOIA/PA supervisors address FOIA/PA requests according to the standards and guidelines provided by DHS and DOJ as well as specified in the FOIA.[18] However, it is unclear whether the same high priority is given. It is imperative that USCIS establish at least the sensitivity to

---

[16] USCIS ORS "FIPS Demonstration" to CISO, November 10, 2005.

[17] USCIS Briefing on FOIA to CISO, August 17, 2005; CISO Issues List to USCIS, November 7, 2005; GAO Exit Conference Review of USCIS Management of A-File Automation Project, January 27, 2006.

[18] USCIS Response to CISO First Request For Information List on FOIA, September 16, 2005.

Freedom of Information Act
Revised Operational Improvement Plan
Page 31

responding timely to FOIA requests as it does for controlled
correspondence and congressional inquiries.  Offices should be held
accountable for responses to FOIA requests as they are held accountable
for controlled and congressional correspondences.

### iii.    *Performance Issues (#6 and #7)*

1.    **Add clearly-defined FOIA responsibilities to the performance
standards as a critical element of all USCIS managers and
supervisors.**

*<u>Reason</u>*: The responsible parties (District Directors, Deputy District
Directors, record supervisors) all have FOIA and PA reflected in their
Performance Work Plans.[19]   However, it is unclear whether these
production duties have strict accountability and target dates.  Incorporating
strict FOIA responsibilities into the performance standards of USCIS
managers, supervisors and FOIA staff ensures that appropriate attention
will be given to compliance with the requirements of FOIA.  This
increases the importance that USCIS has placed on FOIA compliance by
clearly stating the performance expected of all USCIS employees.

2.    **Revise job position descriptions for FOIA Officers and
personnel to define the specific skills required to effectively
perform the duties of the position (e.g., ability to communicate
effectively in writing and orally, ability to make sound
decisions and resolve complex issues, and ability to conduct
legal research).**

*<u>Reason</u>*: These skills are a part of the knowledge, skills, and abilities for
the journeymen level FOIA/PA staff.[20]   However, a strong base line of
uniform skills and knowledge should be established for all FOIA
personnel.  FOIA duties should only be assigned to employees who have
received FOIA training and possess the institutional USCIS knowledge,
experience, and communication skills to successfully fulfill these duties.
Placing highly trained and skilled persons in FOIA roles provides
resources to resolve complex issues while ensuring compliance with
FOIA.

---

[19] USCIS Briefing on FOIA to CISO, August 17, 2005.

[20] http://www.usajobs.opm.gov/, Vacancy Announcements for FOIA/Paralegal Specialist, last checked May
2006.

Freedom of Information Act
Revised Operational Improvement Plan
Page 32

  *iv.*  ***Actions to improve FOIA training, upgrade IT, and address accountability (#8, #9, and #10)***

    **1.**  **Designate ORS as the lead office to administer and oversee USCIS National FOIA/PA program – to include issuing USCIS-wide guidance, procedures, policies, and operations consistent with DHS FOIA/PA, updating websites, and conducting periodic audits/ inspections of FOIA processes in the program, NRC, HQ, and Vermont.**

    <u>*Reason*</u>: The USCIS FOIA/PA Program is organizationally situated under ORS.[21] The USCIS FOIA/PA Program receives guidance, regulations, and policy from DHS and DOJ[22], and ensures that the policy from those organizations is interpreted and disseminated throughout USCIS. However, there should be increased accountability for the FOIA program and assurances that this accountability is at the highest levels. When it was created, ORS was given the responsibility for oversight of FOIA policy (but not FOIA operations), records management, Privacy Act, and information resource management programs. ORS should have the responsibility to coordinate the USCIS National FOIA/PA program and provide central management control and accountability.

    **2.**  **Require management to submit a written verification to the ORS FOIA Office that FOIA Supervisors have received FOIA training and that they possess the skills and expertise required of the position. Where the FOIA Supervisor has not received FOIA training, the office must demonstrate that the Supervisor will obtain appropriate training within a reasonable period of time.**

    <u>*Reason*</u>: All FOIA/PA supervisors are responsible for the requirements of the FOIA.[23] However, it is unclear whether ORS receives actual verification that FOIA supervisors adhere to the 20-day response period. This increases management accountability by ensuring critical assessment of employees' abilities prior to assigning FOIA duties. Management should ensure that personnel with FOIA job responsibilities adhere to FOIA regulations and possess the skills needed to effectively perform the duties of the position. Knowledgeable and trained personnel should significantly improve the overall efficiency and timeliness of the program's FOIA activities.

---

[21] "USCIS Approach to Records Management" Presentation to CISO, October 19, 2005.

[22] DOJ FOIA Reference Guide, http://www.uscis.gov/graphics/aboutus/foia, last modified May 2, 2006.

[23] USCIS Briefing on FOIA to CISO, August 17, 2005.

Freedom of Information Act
Revised Operational Improvement Plan
Page 33

3.    **USCIS shall conduct a needs analysis of all FOIA programs to consider the staff and monetary resources needed to comply with the recommendations of this and various congressional reports, to reduce the backlog of outstanding FOIA requests, and to improve overall response times. Every office should have staffing levels sufficient to allow for timely processing of requests.**

*Reason*: USCIS indicated that an updated analysis[24] is being conducted in the development of the backlog reduction plan. Pursuant to Executive Order 13392, USCIS submitted its <u>FOIA Operations Review Report</u> through the Director of Departmental Disclosure & FOIA for the Chief Freedom of Information Act Officer on March 17, 2006. The report includes an assessment of USCIS FOIA operations, and includes the use of information technology, practices with respect to requests for expedited processing, implementation of multi-track processing, and availability of public information through websites and other means. The report also identifies ways to eliminate or reduce the FOIA backlog[25]. USCIS should use this report and this recommendation to develop a comprehensive FOIA backlog reduction plan to streamline this enormous operation and make it more responsive to its requesters and to the American People.

B.    *Centralization*

FOIA policy and operations in HQ should be consolidated and joined organizationally with the USCIS records management program and its Privacy Officer function in ORS. A web-enabled tracking and coordinating system should be developed, which will correct problems encountered with the current system, and comply with E-FOIA. The transition to the new system should be managed in accordance with standard information technology practices. Complex FOIA requests, expedited processing, fee waiver determinations, and billing should have central oversight and a lead office designated as the point of contact with the requester.

1.    **Consolidate HQ FOIA Policy Branch with HQ FOIA Operations Branch. Move entire FOIA Program to ORS and the HQ FOIA Supervisors to the units within the programs that provide the information resource management functions, such as records management and computer support services.**

*Reason*: Although NRC and Burlington currently report to HQ FOIA, USCIS indicated that FOIA/PA will not consider any organizational changes at this time because the FOIA/PA Program is part of the USCIS Domestic Operations Program.[26] However, with the separation of the FOIA policy unit from FOIA Operations, there is no clear responsibility

---

[24] USCIS Response to CISO Second Request For Information List on FOIA, December 14, 2005.

[25] USCIS FOIA Operations Review Report, March 17, 2006

[26] USCIS Response to CISO Second Request For Information List on FOIA, December 14, 2005.

Freedom of Information Act
Revised Operational Improvement Plan
Page 34

for managing the USCIS FOIA program. It is unclear how USCIS
operations interact with the FOIA program to respond to the backlogged
requests. Severe coordination problems have resulted from the separation.
FOIA personnel responsible for the day-to-day processing of requests
have indicated that they lack clear direction and guidance on many issues.
The separation of functions has resulted in a lack of consistency and an
inability to address issues in a timely manner.

2.    **Shift all Regional FOIA Officers and FOIA Supervisors within
programs to the FOIA offices that provide the information
resource management functions, such as records management
and computer support services.**

*Reason*: In the DHS FOIA 2004 Annual Report[27], USCIS indicated that it
was poised to implement a FOIA centralized processing system. The
centralization project was proposed in July 2001 and approved 2002.
After USCIS transferred to DHS, the DHS Privacy Officer endorsed the
June 2002 proposal. However, the centralization still remains to be
completed. To effectively administer USCIS responsibilities under FOIA
for identifying and managing records, and under E-FOIA for posting
certain categories of records to the USCIS website, there should be a
partnership between the FOIA personnel, records management, and
information resources management staff with the Privacy Act to ensure
compliance with that statute and regulations.

3.    **Require all USCIS programs with FOIA web sites to provide a
link to NRC/ HQ/ Vermont web pages for submission of
electronic FOIA requests.**

*Reason*: This will provide the public with an efficient and convenient way
to electronically send in a request to the appropriate source for a
response.[28]

C.    ***Update/Amend Current Policies, Regulations, and Guidance***

Policies, regulations, and guidance should be frequently updated or developed to
provide reliable USCIS-wide resources and address commonly encountered problems,
particularly for electronic records. A FOIA training program should be uniformly
developed and implemented for all employees to ensure effective compliance with FOIA
and E-FOIA.

---

[27] Department of Homeland Security FOIA Annual Report for 2004, published April 2005, p. 8.

[28] USCIS ORS "FIPS Demonstration" to CISO, November 10, 2005.

Freedom of Information Act
Revised Operational Improvement Plan
Page 35

**i.**    ***Training (#14 and #15)***

   **1.**    **Develop an Annual Mandatory comprehensive and uniform National FOIA Training Program for all USCIS employees to include training for USCIS program staff on their FOIA responsibilities.**

   ***Reason****:* USCIS indicated that there is a national training program available for its program staff: there are four courses on the virtual university and classroom instruction bi-annually, and Program Office staff has training on responsibilities under the FOIA and the PA.[29]   However, USCIS should have workshops on FOIA exemptions that emphasize the criteria for making information-disclosure determinations and address procedural issues.  There should be workshops on the Privacy Act of 1974, addressing definitions, restrictions on disclosure, requests for record access and amendment, and fair information practices.

   USCIS officials who need periodic updates on FOIA case law and policy guidance developments should attend government wide FOIA programs. USCIS should hold agency wide FOIA conferences for all employees with specific emphasis on USCIS related issues, such as critical discretion when disclosing applicant immigration status information.  A national training program ensures compliance with the FOIA, consistency in the application of its exemptions and in the responses to requests, and a clear understanding of USCIS records practices for the purpose of locating and providing responsive FOIA records.  USCIS FOIA staff should have a thorough knowledge of FOIA resource materials, background and legislative history, disclosure mandates, exemptions to mandatory disclosure, administrative considerations, and the relationship of the FOIA to the Privacy Act of 1974.  All USCIS staff should have a required annual certification of FOIA training and course completion, similar to the DHS employee required annual certification of Security training.

   **2.**    **Develop new standard operating procedures (FOIA Manual) that focuses on processing complex requests, multiple-office or multiple-region requests, centralized billing, and decisions on fee waivers and expedited processing; performing searches within offices, reviewing responsive records, and certifying/ documenting these steps; and for separating the releasable from withheld FOIA records at the time of initial processing to comply with FOIA and records management guidelines.  Post these procedures on the USCIS intranet websites for reference by all employees.**

   ***Reason****:* USCIS indicated that it has an online FOIA/PA handbook, but this is an old reference guide from when legacy INS belonged to DOJ.[30]

---

[29] USCIS Response to CISO Second Request For Information List on FOIA, December 14, 2005.

[30] DOJ FOIA Reference Guide, http://www.uscis.gov/graphics/aboutus/foia, last modified March 2, 2006.

Freedom of Information Act
Revised Operational Improvement Plan
Page 36

USCIS also has not developed any reference guides to govern FOIA operations, but instead uses the DOJ guide as its basis. To be consistent, all USCIS FOIA programs should require the most recent standard operating procedures and guidelines. This is important in a decentralized FOIA operation where the searches and substantive reviews are made within the program offices by persons who are experts in the subject area of the requested records, but who may know little or nothing about the FOIA. This procedure would establish some basic requirements every employee should know before answering a FOIA request.

ii.    *Processing (#16 and #17)*

1.    **Require each program to develop a plan to process FOIA requests within its respective offices that conforms with DHS and USCIS guidelines.**

**_Reason_**: This action will coordinate requests with consistent application of FOIA provisions, and compliance with DHS and USCIS guidelines.[31]

2.    **Require that all USCIS FOIA denial letters and "no records" responses include the procedures and deadline for filing an appeal, and be sent to the FOIA requester by certified mail with return receipt requested to confirm receipt of the decision letter.**

**_Reason_**: USCIS currently outlines in each letter that the requester has the right to appeal a decision and provides the deadlines for such an appeal.[32] However, USCIS does not send its responses by certified mail or confirm a dated receipt of response, and thus is forced to accept FOIA appeals beyond the 30-day deadline. This requested process may significantly reduce the number of FOIA appeals.

IV.    **BENEFITS FOR USCIS AND DHS**

A.    *Customer Service*

i.    ***Timely Receipt of Information*** - Improved customer service will be realized when USCIS can deliver the FOIA product in a manner that is consistent with law and regulation and meets the requirements and expectations of the customer.

ii.    ***Reduced Cost- a. financially (less litigation); b. time (additional contact, follow-up, and paperwork)*** - Many lawsuits are brought, not because of a denial of the request, but because USCIS failed to communicate with the requesters on a timely basis on where the request is in the FOIA process. As of November 30, 2005, USCIS has 13 FOIA cases in different stages of litigation[33]. DOJ

---

[31] USCIS Response to CISO First Request For Information List on FOIA, September 16, 2005.

[32] USCIS Response to CISO Second Request For Information List on FOIA, December 14, 2005.

[33] Id.

Freedom of Information Act
Revised Operational Improvement Plan
Page 37

> attorneys should not have to defend lawsuits where the information fits that category.

> iii.   ***Improved communication between USCIS and customer (more contact creates less frustration)*** - USCIS' failure of adequate communication with FOIA requesters on a timely basis is the single biggest frustration that people have with the FOIA. Customer service will vastly improve when USCIS creates a FOIA designated officer to mediate disputes between FOIA requesters and agencies.

**B.**    ***USCIS and DHS Efficiency***

> iv.   ***Reduce backlog -*** Actions to improve USCIS FOIA operations will substantially reduce the backlog by not allowing USCIS to utilize certain FOIA exemptions when it fails to respond to requests within the statutorily mandated response time.

> v.   ***Decrease cost- litigation*** - While any improvements in the USCIS FOIA system will cost money initially, substantial money will be saved by decreased litigation costs over the long run.

> vi.   ***Streamlined process and consistency in responses*** – USCIS will streamline responses by creating a database to contact requesters on a thirty day cycle that reports the status of the FOIA request.

> vii.   ***Increased efficiency because of skilled and trained FOIA officers***- Comprehensive education and training of USCIS FOIA staff will develop proficient expertise in FOIA operations that will increase performance accountability, and thus, improve efficiency.

> viii.   ***Improved technology increases operational efficiency*** –The implementation of the seventeen actions will improve operational efficiency and significantly streamline the USCIS FOIA/PA Program, thereby strengthening the efficacy of the overall Departmental Disclosure and FOIA operations in the DHS Privacy Office.

**B.**    ***National Security***

Adoption of this recommendation will not adversely impact national security.

Freedom of Information Act
Revised Operational Improvement Plan
Page 38

**APPENDIX E: USCIS RESPONSE TO THE USCIS OMBUDSMAN RECOMMENDATIONS**



To:            Prakash Khatri
               USCIS Ombudsman

From:          Dr. Emilio T. Gonzalez /s/
               Director, USCIS

Date:          October 5, 2006

Subject:       Response to Recommendation #30, To Improve Freedom of Information
               Act Operations

This is in response to your office's recommendation to improve Freedom of Information
(FOIA) operations, by implementing 17 actions and requirements.  In your
recommendation, you state the following:

> "The existing USCIS FOIA program results show that FOIA processing is
> given low priority without clearly delineated accountability; thus backlogs
> develop or litigation ensues because of errors in processing.  Oversight,
> insufficient resources, and budget problems have led to deficiencies..."

In 2003, when USCIS was formed, we recognized that our FOIA process was inefficient
and developed a more centralized and accountable process.  We are absolutely confident
in the capabilities of the primary central location, the National Records Center (NRC) and
their approach to streamlined, automated, accountable, FOIA processing.  There is no
doubt they can timely and very expediently manage the approximately 120,000 current
FOIA cases received annually by USCIS.  The main issue for us now is the backlog of
approximately 82,000 cases.

**Specific Recommendations:**

Of your 17 specific recommendations, 10 have previously been accomplished by the
USCIS FOIA Program, largely due to the centralization of the work; four represent work
we have already started and are on track to complete; one is no longer applicable, again,
due to centralization; and finally, two of the recommendations we do not agree with.  In
summary, we view this as a positive indication that USCIS initiatives towards FOIA

Freedom of Information Act
Revised Operational Improvement Plan
Page 39

improvements are being recognized by others as things that needed to be done and are supportive of our efforts.  Each recommendation is addressed below:

1. Develop a web-enabled USCIS-wide FOIA Tracking System that meets statutory requirements of E-FOIA and provides document management and workflow for simultaneous reviews and multi-track assignment of FOIA requests.

    USCIS Response: USCIS' electronic system, Freedom of Information and Privacy Acts Processing System (FIPS), is not presently a web enabled system, but does meet the statutory requirements for E-FOIA and reporting requirement to Congress and Executive Branch components.  As with many older technologies, we are in the process of converting them where appropriate to web-enabled technologies.  In the case of FIPS, it is a valuable and critical tool in the processing of FOIA and we have a request for investment pending before our Senior Review Board for the transition to a web-enabled FIPS system.  We anticipate that the request will be approved and FIPS will be web-enabled by the end of Fiscal Year (FY) 2007.

2. Replace all remaining USCIS stand-alone FOIA systems, after either importing existing electronic files into the new USCIS-wide FOIA system or establishing a link from the new system to the old system to make full use of the existing technology and electronic records.  Give FOIA Officers, FOIA Management, and other FOIA personnel, access to the new FOIA system as needed.

    USCIS Response: FIPS is USCIS' only FOIA/PA processing system.  There are no stand-alone FOIA systems.  Prior to the decision to centralize FOIA, each field office had its own FIPS access, but it was tied to the main FIPS server.  As the USCIS FOIA/PA program is now centralized, there is no need for FIPS stations or access at the field offices.  The access to FIPS at the central locations is widely available to those who need it, from FOIA officers, to supervisors and for management reports.

3. Provide FOIA Supervisors in each program with a copy of a monthly list of overdue FOIA requests and a bi-weekly list of pending requests, with a copy of both lists sent to the Senior Management of the FOIA/PA program.

    USCIS Response: Since centralization is almost complete, the majority of the requests are processed by the National Records Center (NRC).  The NRC, using FIPS report engine, does generate monthly reports (at times more often) informing the various Program and field offices of the status of the requests for responsive records.  The reports are sent to the program heads and the regional records managers.

4. Require FOIA management to review the list of overdue FOIA requests, verify the number of outstanding requests, and commit efficient resources to reduce the backlog.  The status of this backlog-reduction effort should be reported to the ORS FOIA Office monthly.

Freedom of Information Act
Revised Operational Improvement Plan
Page 40

> USCIS Response: The NRC does track all FOIA processing, including
> backlog work.  USCIS is committing additional resources where it is
> financially able to do so in conjunction with other agency priorities.  We
> recently had a staffing model created for the FOIA/PA program to
> determine how many resources were required to deal with the backlog and
> how many were needed to keep up with receipts.
>
> USCIS is not currently funded for any of the FOIA work, since
> approximately 98% of the agency's budget is derived from fee revenue.
> Since we do not currently charge applicants for FOIA as part of any fee,
> and we do not get appropriated funds for this purpose, any funding USCIS
> is able to divert to FOIA, is at the expense of some other activity.  We
> have requested a fee for FOIA requests as part of the FY08 fee review
> process.

5. Require each FOIA supervisor to review the bi-weekly list of pending FOIA
   requests and address other FOIA issues with the same high priority given to
   controlled correspondence and congressional inquiries.

   > USCIS Response: As previously stated, USCIS has improved the FOIA
   > process and is giving it a much higher priority than was done in previous
   > years.  If the program begins to receive a fee for the service given, it will
   > greatly enhance the ability of the program to respond timely to requests.

6. Add clearly-defined FOIA responsibilities to the performance standards as a
   critical element of all USCIS managers and supervisors.

   > USCIS Response: This will be accomplished as management prepares its
   > cascading goals under MAXHr.

7. Revise job position descriptions for FOIA Officers and personnel to define the
   specific skills required to effectively perform the duties of the position (e.g.,
   ability to communicate effectively in writing and orally, ability to make sound
   decisions and resolve complex issues, and ability to conduct legal research).

   > USCIS Response: This has been accomplished.

8. Designate ORS as the lead office to administer and oversee USCIS National
   FOIA/PA program – to include issuing USCIS-wide guidance, procedures,
   policies, and operations consistent with DHS FOIA/PA, updating websites,
   and conducting periodic audits/inspections of FOIA processes in the program,
   NRC, HQ, and Vermont.

   > USCIS Response: This has been accomplished as part of the centralization
   > of FOIA under the Records Division and primarily at the NRC and
   > Headquarters components.

9. Require management to submit a written verification to the ORS FOIA Office
   that FOIA Supervisors have received FOIA training and that they possess the
   skills and expertise required of the position.  Where the FOIA Supervisor has
   not received FOIA training, the office must demonstrate that the Supervisor
   will obtain appropriate training within a reasonable period of time.

Freedom of Information Act
Revised Operational Improvement Plan
Page 41

> USCIS Response: The FOIA/PA Program office has conducted training throughout the year. FOIA and PA training have been afforded to both the FOIA/PA professionals and the non-FOIA/PA professionals. Additionally, USCIS will be issuing periodic electronic broadcasts reminding the workforce of its responsibilities under the PA.

10. USCIS shall conduct needs analysis of all FOIA programs to consider the staff and monetary resources needed to comply with the recommendations of this and various congressional reports, to reduce the backlog of outstanding FOIA requests, and to improve overall response times. Every office should have staffing levels sufficient to allow for timely processing of requests.

> USCIS Response: This has been accomplished as part of the centralization of FOIA under the Records Division and primarily at the NRC and Headquarters components.

11. Consolidate HQ FOIA Policy Branch with HQ FOIA Operations Branch. Move entire FOIA Program to ORS and the HQ FOIA Supervisors to the units within the programs that provide the information resource management functions, such as records management and computer support services.

> USCIS Response: This has been accomplished as part of the centralization of FOIA under the Records Division and primarily at the NRC and Headquarters components.

12. Shift all Regional FOIA Officers and FOIA Supervisors within programs to the FOIA offices that provide the information resource management functions, such as records management and computer support services.

> USCIS Response: This has been accomplished as part of the centralization of FOIA under the Records Division and primarily at the NRC and Headquarters components.

13. Require all USCIS programs with FOIA web sites to provide a link to NRC/ HQ/ Vermont web pages for submission of electronic FOIA requests.

> USCIS Response: FOIA has a web link on the main USCIS web-page. USCIS HQ will ensure that there is a connection with the NRC web page. Vermont does not have a separate webpage.

14. Develop an Annual Mandatory comprehensive and uniform National FOIA Training Program for all USCIS employees to include training for USCIS program staff on their FOIA responsibilities.

> USCIS Response: This has been accomplished as part of the centralization of FOIA under the Records Division and primarily at the NRC and Headquarters components. Training is updated periodically and we will continue to refine as improvements are made to automation.

15. Develop new standard operating procedures (FOIA Manual) that focuses on processing complex requests, multiple-office or multiple-region requests, centralized billing, and decisions on fee waivers and expedited processing; performing searches within offices, reviewing responsive records, and

Freedom of Information Act
Revised Operational Improvement Plan
Page 42

certifying/documenting these steps; and for separating the releasable from withheld FOIA records at the time of initial processing to comply with FOIA and records management guidelines. Post these procedures on the USCIS intranet websites for reference by all employees.

USCIS Response: USCIS does use the Department of Justice (DOJ) reference guide as the basis for the processing. Each FOIA/PA office receives sufficient copies of the DOJ reference guide on a biannual basis as they are produced. USCIS also has an on-line handbook (available on the Intranet) that is being updated. Each student who attends the formal classroom training receives a student guide that incorporates the requirements stated above. The instructor provides the students with a phone number and name of individuals who can answer their questions on a daily basis or as needed. Training is updated periodically and we will continue to refine as improvements are made.

16. Require each program to develop a plan to process FOIA requests within its respective offices that conforms to DHS and USCIS guidelines.

USCIS Response: Under the centralization plan, all FOIA/PA requests will be processed at the NRC, HQ and Vermont. Only the 4 service centers remain to be centralized. These offices have staffs dedicated exclusively to the processing of FOIA/PA requests. All CIS FOIA requests are processed by one of these offices.

17. Require that all USCIS FOIA denial letters and "no records" responses include the procedures and deadline for filing an appeal, and be sent to the FOIA requester by certified mail with return receipt requested to confirm receipt of the decision letter.

USCIS Response: This requirement will be cost prohibitive given the number of requests that the agency receives, an average of approximately 120,000 cases annually. Had we provided this service to-date this fiscal year, we would have incurred an over $190,000 expense just to receipt acknowledge those requests that might result in an appeal or litigation. Given that less than 2% of our requests are appealed (and these are primarily because the client feels we have not disclosed sufficient information), this expense is cost-prohibitive.

We also concur with your assessment of the benefits to be realized for USCIS and all our customers in terms of increased customer service, reduced costs, improved communication, increased efficiency, improved technology and decreased (hopefully eliminated) litigation.

Freedom of Information Act
Revised Operational Improvement Plan
Page 43

In conclusion, our main issue is the backlog.  We are confident of the team, technology, and leadership going forward, but it is the backlog that remains the chokepoint.  We recognize this problem and are taking steps to address it as quickly as possible, as evidenced above.  Process and technology improvements alone will not suffice to eliminate the backlog - resources and funding are also needed.  We are hopeful that this issue will also be resolved in the near future.

If you have any questions, or would like to discuss this further, please contact Dominick Gentile, Chief, Records Division at 202 272 8686.

# Exhibit C

**Plaintiff's Opposition to Defendant's Motion to Amend the Court's April 27, 2007
Scheduling Order and for a Stay of Proceedings**

*Electronic Frontier Foundation v. Department of Homeland Security*,
**Civil Action No. 06-1988 (ESH)**



**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

February 15, 2007

John R. Coleman
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6118
Washington, DC 20530

            Re:    *EFF v. DHS*, Civ. No. 06-2154 (D.D.C.);
                    FOIA Request No. DHS/OS/PRIV 07-160

Dear Mr. Coleman:

       I am writing in response to Ms. Lockett's letter dated January 23, 2007, concerning the above-numbered FOIA request which is the subject of pending litigation. In an effort to assist the agency in responding to the request, to the extent possible I will provide the "clarifications" Ms. Lockett requested. In so doing, I note that the parties are currently litigating EFF's entitlement to expedited processing of this FOIA request, and my willingness to assist the agency should in no way be construed as a suggestion that the agency is somehow justified in its failure to complete the processing of the request. With respect to the "global" issues raised by Ms. Lockett, we respond as follows:

       1) EFF consents to the agency's suggestion that references in the request to "ATS" be construed as applying only to information concerning "ATS-Passenger."

       2) We are unable to consent to the agency's suggestion that the "start date" for the request be construed as "on or about the year 2000." As noted in our letter of November 7, 2006, DHS spokesman Russ Knocke, in defense of the ATS, told the Associated Press that "screening for air and sea travelers has been in place since the 1990s." As such, we are willing to consent to a "start date" of 1990.

       3) We are unable to consent to the agency's suggestion that the scope of the request be limited to "final documents." We believe that it is likely that "draft" documents may contain factual material that must be segregated for release even if "predecisional" material in such documents may be properly withheld.

       With respect to Ms. Lockett's specific requests for clarification, we respond as follows:

1875 Connecticut Ave., NW · Suite 650 · Washington, DC 20009
202 797 9009   202 797 9066   www.eff.org   information@eff.org

John R. Coleman
February 15, 2007
Page two

**All records, including Privacy Act notices, that discuss or describe the use of personally-identifiable information by CPB (or its predecessors) for purposes of "screening" air and sea travelers.**

This aspect of the request was prompted by the assertion of Mr. Knocke, noted above. The request seeks information documenting his claim and the Privacy Act notices that were published in association with the activities he described.

**All records that discuss or describe the redress that is available to individuals who believe that the ATS contains or utilizes inaccurate, incomplete or outdated information about them.**

EFF consents to the agency's suggestion that the request be construed as applying only to "redress that is available" (as the request clearly indicates).

**All records that discuss or describe the potential consequences that individuals might experience as a result of the agency's use of the ATS, including but not limited to arrest, physical searches, surveillance, denial of the opportunity to travel, and loss of employment opportunities.**

EFF consents to the agency's suggestion that the request be construed *not* to apply to "actual enforcement records," which we understand to mean records concerning specific individuals who have been the subject of some kind of law enforcement proceeding. EFF further consents to the agency's suggestion that the request be construed as applying to "policies that are currently in force," and not to those that "have been effective in the past."

**All complaints received from individuals concerning actions taken by the agency as a result of ATS "risk assessments" or other information contained in the ATS, and the agency's responses to those complaints.**

EFF consents to the agency's suggestion that the request be construed as applying only to "individual complaints arising from the ATS-Passenger system," provided that a specific reference to "ATS-Passenger" need not be included in the complaint in order for it to come within the scope of the request.

**All records that discuss or describe Section 514 of the Department of Homeland Security Appropriations Act, 2007, P.L. 109-295 (H.R. 5441) and its prohibition against the development or testing of "algorithms assigning risk to passengers whose names are not on Government watch lists."**

John R. Coleman
February 15, 2007
Page three

EFF consents to the agency's suggestion that the request be construed *not* to apply to "documents which discuss this section as it relates only to Secure Flight, and do not mention or implicate ATS-Passenger."

**Whether a system of due process exists whereby aviation passengers determined to pose a threat are either delayed or prohibited from boarding their scheduled flights may appeal such decision and correct erroneous information contained in the ATS.**

EFF disagrees with the agency's assertion that this section of the request appears to duplicate the earlier section dealing with "redress." This section seeks information concerning redress for "aviation passengers determined to pose a threat [who] are either delayed or prohibited from boarding their scheduled flights," while the previous section concerns redress for "individuals who believe that the ATS contains or utilizes inaccurate, incomplete or outdated information about them." While we recognize that there is likely to be some overlap between these categories of records, we believe that they are distinct.

**Whether the agency has, pursuant to the requirements of section 44903(i)(2)(A) of title 49, United States Code, modified the ATS with respect to intrastate transportation to accommodate States with unique air transportation needs and passengers who might otherwise regularly trigger a high risk status.**

Based upon the agency's representation that it "cannot identify the documents" described in this section of the request, EFF withdraws this section of its request.

I hope that this response adequately addresses the agency's inquiry. Please feel free to contact me if I can provide additional clarifying information.

Sincerely,

David L. Sobel
Senior Counsel